Bennington,
January,
1827.[*]

## Sereno Giddings *vs.* Ephraim Munson.

S. G., being entitled by devise to a share in the real and personal estate of J. G.,
deceased, by his agent drew an order in favor of C. S. on the executor of J. G., di-
recting him to pay over to C. S. all the right, title, property, interest or demand,
which S. G. had under the will of J. G., except eighty dollars and such as was un-
der any legal incumbrance by attachment at the suit of R. And at the same time,
(the order being immediately accepted,) said agent took the executor's note for the
eighty dollars, and gave him a receipt in full of all the right, title, interest and de-
mand of S. G. under the will, with the like exception on account of R's attachment.

On ejectment brought by S. G. for a part of the real estate which had been severed to
his share, in a division directed by the probate court among the devisees,—*Held*
that parol evidence was admissible to show that the premises sued for were not
included in the settlement made with the executor.

Ejectment for land in Manchester. The plaintiff derived title
under the will of Job Giddings, his father, who died legally seiz-
ed and possessed of the premises in question, as part of his home
farm, in June, A. D. 1816. In April, A. D. 1816, the said Job
made his will, and thereby devised to the plaintiff one equal
seventh part of all his estate, real and personal, which should re-
main after payment of debts, and certain legacies to a small
amount, with the charges of settling his estate. He also devised
a seventh part to each of his other six children, and appointed
Eliphalet Wells, the husband of his daughter Hannah, his sole
executor. To the several devises aforesaid the testator added the
following clause : " And I further order and direct, that the whole
of my home farm be and remain to my daughter Hannah Wells
and her husband Eliphalet Wells, provided the said Eliphalet Wells
shall, within a reasonable time after may decease, pay to the other
heirs mentioned in my will so much as the said Hannah's share
shall fall short of the appraisal of said farm ; which reasonable time
it is my desire shall be affixed by the judge of probate."

Appraisers being duly appointed, they reported to the probate
court an appraisal and inventory of the estate, bearing date the
19th day of August, A. D. 1816, by which it appeared that the
home farm aforesaid was appraised at $2800,00, and the other
lands of the testator at $1400,00. And the personal estate, in-
cluding rights and credits, was inventoried at about $2500,00.

[*]This case should in course have been reported by *Judge Aikens* in his second vol-
ume, but he was not seasonably furnished with the papers.

BENNINGTON,
January,
1827.

Giddings
vs.
Munson.

At a probate court holden on the first Monday of September, A. D. 1816, the executor was authorized to make sale of the personal estate, and at the same time, on application of the executor for that purpose, a committee was appointed to divide the real and personal estate among the devisees according to the will. The report of said committee, so far as concerned the real estate, was made to the court of probate, accepted and recorded, on the 2d day of February, A. D. 1818; and by that division the premises in question were severed to the plaintiff, as his share in the home farm, at the sum of $352,94, and his share in the other lands was also designated at the appraised value of $247,06.

. On the first Monday of March, A. D. 1818, the executor rendered his account of the personal estate, by which there appeared to be a considerable surplus for distribution according to the will; but the share of the plaintiff therein was nearly or quite balanced by his note to the testator.

The plaintiff having adduced proper evidence of the matters aforesaid, and having proved the defendant in possession at the commencement of the action, rested his case.

The defendant claimed to hold under a deed of the said Eliphalet Wells to himself; and in order to show a title in said Wells, gave in evidence a power of attorney executed by the plaintiff, then resident in the state of New-York, to Stephen Martindale, dated the 8th day of July, A. D. 1816, authorizing said Martindale to act as his general agent in all things relating to the settlement of the estate aforesaid, and to execute all necessary papers, as receipts, discharges, and conveyances of real estate. This instrument was not acknowledged nor recorded. The defendant then gave in evidence an order drawn by said Martindale as agent of the plaintiff, in favor of Chade Southwick on said Wells, and the acceptance thereof, which were of the following tenor: "Manchester Nov. 27, 1817. For value received of Mr. Eliphalet Wells, executor to the last will and testament of Job Giddings, late of Manchester deceased, Sir, Please to pay over to Chade Southwick, or his order, all the right, title, property, interest or demand, which *Sereno Giddings* has by virtue of said will, except eighty dollars, and such as is under any legal incumbrance by attachment of Jonathan E. Robinson.

        *Stephen Martindale*, agent of the said *Sereno Giddings*."
    "November 27th, 1817. The above order is accepted by me,
                *Eliphalet Wells*, Executor."

The defendant also gave in evidence a receipt, executed by

BENNINGTON,
January,
1827.

Giddings
vs.
Munson.

said Martindale to said Wells, of the following tenor : " Manchester, Nov. 27th, 1817. Received of Eliphalet Wells a note of hand bearing even date with this receipt, for the sum of eighty dollars, which sum was excepted in a certain order given by me as agent for *Sereno Giddings*, in favor of Chade Southwick, on the said Eliphalet, bearing date as above mentioned ; which, together with the above named note, is in full of all right, title, interest and demand, *Sereno Giddings* has by virtue of a will made by Job Giddings, late of Manchester deceased, except all such as is under any legal incumbrance by attachment at the suit of Jonathan F. Robbinson.

*Stephen Martindale*, agent for *Sereno Giddings*."

It further appeared by the records and proceedings of the probate court in evidence at the trial, that on the 2nd day of August, A. D. 1819, the said Eliphalet Wells signified to said court his election to keep the whole of the home farm, and to pay to the other devisees what the share of said Hannah Wells fell short of the appraised value of said farm. At the same time he moved the judge of said court to appoint a reasonable time for such payment, which was thereupon limited by said judge to three calendar months from the day aforesaid.

The plaintiff called the said Stephen Martindale as a witness, to prove that when said order and receipt were given, it was expressly agreed, and understood, that the premises in question were reserved and excepted out of said settlement, and were not intended to be embraced or included in those papers. This evidence, being objected to, was excluded by the county court, and a verdict and judgement passed for the defendant. And thereupon the plaintiff filed his exceptions, which came up for the decision of this Court, according to the statute.

*After argument, the opinion of the Court was delivered by*

Royce, J.—The whole of the testator's home farm, which includes the premises in question, was by the will to belong to Eliphalet Wells and his wife, provided he should, within a reasonable time, to be limited by the judge of probate, pay to the other devisees what her share fell short of the appraised value of said farm. And to show that Wells did thus acquire the title to himself and his wife, at least, as against the plaintiff, the defendant relies on the transaction evidenced by the order and receipt of Nov. 27th, A. D. 1817, as amounting to a payment to the plaintiff in execution of that part of the will.

BENNINGTON,
January,
1827.

Giddings
vs.
Munson.

The parties evidently did not contemplate an arrangement affecting the home farm alone, especially, as Wells had not then signified his election to retain it under the will.  But upon the supposition, (the correctness of which we have no occasion to decide,) that payment to a single devisee in full of his interest in the estate generally, though made before the election was signified, would operate without a deed, after the election made, to extinguish the legal interest of such devisee in the farm ; the only question to be determined relates to the evidence offered by the plaintiff and rejected at the trial.

The objection to the testimony of the witness offered was founded in the rule of law, that oral evidence shall not be received to contradict, vary or control, the evidence of written documents.  This rule is universally acknowledged, and we have only to ascertain the extent of its application in the present case.  It does not operate to exclude parol evidence where there is any ambiguity or uncertainty, arising from extrinsic circumstances, to be removed ; for some latent reference is then necessarily to be presumed, either from the words employed, or from the subject matter of the stipulation or contract.  It does not always follow that a written contract is void for uncertainty, or rendered inoperative by the statute of frauds, though a reference to extrinsic facts and circumstances, which are to influence the operation of the contract, is implied from the writing itself.— *Couch* vs. *Meeker*, 2 *Conn. Rep.* 302 ; *Wait* vs. *Fairbanks, Bray.* 77 ; 1 *Mason* 9 ; 8 *T. R.* 379.   In the case of *Cole* vs. *Wendel,* 8 *Johns.* 90, the defendant had contracted in writing to purchase of the plaintiff certain bank shares, on which 10 *per cent* only had been paid in, and to pay an advance of 5 *per cent* on the shares when received.   The question was, whether the 5 *per cent* was payable on the nominal amount of the shares, or on the 10 *per cent* which had been paid in upon them ; and to determine it, parol evidence, though objected to, had been admitted at the trial.   *Spencer, J.* says, in delivering the opinion of the court,—" The terms of the contract are equivocal, and the ambiguity is a latent one ; as such, and on the strictest principles, the circumstances of the case may be proved and taken into consideration, in determining how far the 5 *per cent* advance was to be calculated."   It is also a general rule, that when a writing not under seal is given in evidence as containing an admission of a party, he may explain it, and show it to have originated from mistake.   Another qualification of the leading principle first stated has been recognized by the English

BENNINGTON, courts, and those of New-York, and generally acted on for a few years past in this state. It is, that a receipt for money, or a general discharge unsealed, is not conclusive evidence to the extent of its terms, but is subject to be explained or rebutted by oral testimony.—2 *T. R.* 366 ; 2 *Johns.* 378 ; 3 *Ib.* 319 ; 5 *Ib.* 68 ; 8 *Ib.* 304 ; 9 *Ib.* 310. It appears by a note of the case of *Sessions* vs. *Gilbert*, reported in *Bray.* 75, that this Court formerly held the rule in regard to receipts to be more limited than it is now laid down. But we believe the distinction there taken has not been followed to any considerable extent, and that the more liberal doctrine contained in the authorities referred to has the general approbation of the profession. And considering that such instruments are daily executed with little or no attention to the comprehensive import of the terms employed, we think a liberal rule of evidence on the subject is required for the furtherance of justice.‡

There is a looseness and inaccuracy of expression in the two instruments given in evidence in this case, by which it is left in some degree uncertain to what extent they were intended to operate. While the terms of the order admit a construction extending to the payment for real estate, their more obvious application is to such rights and claims as are usually extinguished by payment, or to such kinds of property as might be transferred by delivery to the holder of the order. And this uncertainty is much increased by the exception contained in both instruments, of such estate as was legally incumbered by Robinson's attachment. No description is given of the property attached, nor estimate of its value, nor is any provision made in case the attachment should be dissolved, or the incumbrance removed. The usual office of an exception or reservation is, to save or keep back something to the party who passes or discharges a right ; but by the use of the word " legally" in this instance, the intended effect of the exception is rendered vague and uncertain. Whether that expression had reference to the validity of the attachment for the time being, or to its ultimate effect on the title of the estate attached ; and whether on failure of the attachment to hold the estate, the exception was to restore it disencumbered to the plaintiff, or to enlarge the benefit of the settlement to the executor, is not readily discovered from the papers alone.

It may be further remarked, that the order and receipt were

---

**Giddings**
*vs.*
**Munson.**

*January,*
*1827.*

‡See the same doctrine recognized in *Burnap* vs. *Partridge*, 3 *Vt. Rep.* 147–8.
*Reporter.*

executed, and the order accepted, at the same time ; and taken <span>BENNINGTON, January, 1827.</span> together, they amount to nothing more, upon any construction of them, than a receipt in full, or acknowledgement of satisfaction, <span>Giddings vs. Munson.</span> for the plaintiff's interest in the estate. They furnished therefore but *prima facie* evidence that he had been fully paid.

On these grounds we think the plaintiff was entitled to give the explanation which he attempted at the trial, and that the evidence offered for that purpose should have been admitted.

Judgement of the county court re-<br>versed, and a new trial granted.

*Sheldon & Sargeant*, for plaintiff.
*Bennet & Aiken*, for defendant.