KENDRICK & COMPANY v. VISAGE.

1. One who has a contract for mining ore at seventy-five cents per ton, and who receives monthly payments at sixty-five cents per ton without objection made at the time, is not estopped from showing by parol evidence that there was no modification of the contract, and that after a certain time the work was done with the understanding that the original contract should continue in force, but that this fact should be kept secret so as not to discontent others who may have submitted to mine at the reduced rate. Though the employer gave notice to the plaintiff and all others that the contract rate was reduced, such notice, without his assent to the new rate, would not operate to modify his existing contract, if that contract, as originally made, embraced all the work afterwards done.

2. Although the weight of the evidence seems against the verdict, this court will not control the discretion of the trial judge in refusing a new trial, there being slight evidence in favor of the verdict and enough to uphold it.　　*Judgment affirmed.*

January 19, 1892.

Contracts. Master and servant. New trial. Before Judge MADDOX. Walker superior court. February term, 1891.

Visage sued Kendrick & Co. on an account for balance claimed to be due for mining ore, and obtained a verdict. The defendant's motion for a new trial was overruled. The grounds of the motion were, (1–2) that the verdict was contrary to law and evidence, and (3) that the court erred in refusing to charge thus: "If the plaintiff received sixty-five cents per ton for ore mined by him, for the months of May, June and July, or for any other series of consecutive months, and did not, at the time of receiving said payment, distinctly notify the defendants that he would insist upon the ten cents per ton additional, he cannot recover in this case." The court in effect so charged, except he did not charge that the claim for the additional ten cents per ton should have been distinctly made at the time of receiving the sixty-five cents per ton.

The testimony for the plaintiff was : He made a contract with the defendants to mine ore for them. The contract was that he should get seventy-five cents per ton for all ore mined by him, and he was to mine at the Crabtree entry and cut clear through the hill, or until he met a party who might commence on the opposite side of the hill, if defendants should put another party at work on the opposite side. He commenced work about January 1, and took out ore for several months, for which they paid him seventy-five cents per ton. About the 1st of May he received notice, sent by the defendants to all of the men mining there, that the wages would be reduced from seventy-five to sixty-five cents per ton. He went to Nixon (a member of the defendant firm and the manager of the work) and asked about the matter, and Nixon replied it was so, and that a cut would be made. Plaintiff told him he could not live at that. Nixon said he would see him again about the matter ; that if he gave plaintiff seventy-five cents, all the balance of the miners would know it, and that if he gave it to plaintiff, it would have to be kept a secret. The firm paid plaintiff regular pay-day in each month for all the ore he mined at sixty-five cents per ton. At none of said times did he say anything about the additional ten cents—said nothing about it until he brought suit. He told " him" [Nixon] he would not work for that, and would insist upon the contract. " He" [Nixon] said, " Go on; I'll see you later." He never did see plaintiff.

For the defendants the testimony was : The contract was that the plaintiff was to have a place to mine. The Crabtree entry was given him as the place. He was to get seventy-five cents per ton payable monthly, for ore mined. He was employed to mine by the ton. There was no definite time agreed upon, during which he was to mine at that price. It was not the agreement that he

was to cut through the hill or finish any definite amount of work at that price. When the cut was made, he stopped work for four or five days ; then he went to the defendants' office (Nixon being absent) and said that Nixon had promised to come and see him about the cut, but had not done so ; " I reckon I had as well go on to work ; I always thought that where other men could live, I could make money." He was settled with every pay-day for April, May, June and July at sixty-five cents per ton. He made no complaint nor any demand for anything additional, until after he was discharged. Nixon never agreed that he or his place or mine should be excepted from the cut.

LUMPKIN & SHATTUCK and McCUTCHEN & SHUMATE, for plaintiffs in error.

COPELAND & DREW, *contra*.