## H. Henry Powers *v.* Rutland Railroad Company.

### November Term, 1912.

Present:   Munson, Watson, and Haselton, JJ., and Miles and

Stanton, Sup. JJ.

### Opinion filed December 1, 1914.

*Corporations—"Officer"—Compensation—Sufficiency of Evi-*
   *dence—Substituted Agreement—Contracts of Employment*
   *—Breach—Modification—Substituted Contract—Breach of*
   *Original Contract.*

Where a charter of a railroad corporation provided that the board
   of directors shall choose a president and vice-president, and "shall
   appoint a clerk, treasurer, and all other needed officers to hold
   office during the pleasure of such board," and a by-law of the cor-
   poration provided that "the business of the company shall be con-
   ducted by the following officers": a president, to be elected by the
   board of directors; a clerk and treasurer, to be appointed by the
   board; and other officers, including a general counsel, general
   manager, auditor, superintendent, chief engineer, purchasing agent,
   superintendent of motive power, general freight agent, and general
   passenger agent, to be appointed by the president, the general
   counsel is not an "officer" of the corporation within the meaning
   of P. S. 4262, providing that no "officer" of a private corporation
   shall receive a salary unless it is voted and fixed by the board of
   directors.

The word "officer," within the meaning of P. S. 4262, providing that
   no "officer" of a private corporation shall receive a salary, unless
   it is voted and fixed by the board of directors, designates the
   persons who have the management and control of the corporation
   and its funds through the exercise of corporate functions, and not
   persons whose positions and duties are those of mere employees.

An officer of a corporation may make a valid contract therewith in his
   individual capacity, and his right to receive compensation for his
   services under such contract without a vote of the directors must
   depend on the nature of the relation established by his under-
   taking, and so the fact that the general counsel was also for a
   time a director, and therefore an officer, of the corporation, does

not preclude him under P. S. 4262, from receiving compensation for his services as counsel, without that compensation having been voted by the board of directors.

The provision, of No. 187, Acts 1902, giving the directors of a railroad corporation authority to choose from their number a president and one or more vice-presidents, and "shall appoint a clerk, treasurer, and all other needed officers to hold office during the pleasure of such board," means "other needed officers of like character" such as an assistant treasurer or the like, but not a mere employee like a general counsel.

There are many matters regarding which the proper corporate office can make contracts not limited by his term, for the requirements of the business authorized by the charter may be such that authority to contract for a longer period may be implied; but contracts for personal services are seldom of that character, and such contracts for a period exceeding the official term, when not supported by an express authorization, are sustained only on special grounds.

In assumpsit for the balance claimed to be due under a written contract made with plaintiff by the president of a railroad company appointing plaintiff general counsel for five years at a fixed annual salary, evidence *held* not to show that the executive committee, though they knew of the appointment and of the agreed salary, knew that the agreement was in writing and for a fixed period.

In assumpsit for the balance due under a contract made by the president of a railroad company appointing plaintiff general counsel for a period of five years at a fixed annual salary, the fact that defendant's counsel, upon being asked by the court as to the ground of his objection to offered evidence, said in substance that the president had no authority to make any agreement about salary, did not preclude defendant from making other defences, as that of a modified or substituted contract.

Where the by-laws of a railroad corporation authorized its president to appoint a general counsel, but gave to the executive committee of the board of directors full control of the affairs of the corporation during the recess of the board, and the president in writing appointed a general counsel for five years at an annual salary of $10,000, but when the executive committee learned of the appointment and of the amount of the salary, though without knowledge that it was for a fixed period, they adopted a resolution which was communicated to the general counsel, fixing his annual salary at

$6,000, without allowance of expenses while in a designated city, and the general counsel protested to the president, who told him to accept the reduced salary and that the president would pay the expenses and would see that the full salary fixed by the original contract was paid the general counsel, and thereafter the latter presented no bills for his expenses while in that city, and each month accepted the payment of his salary at the rate fixed by the executive committee, giving a receipt in full; even if it is admitted that the president had authority to make the original contract with the general counsel, he did not have authority to bind the corporation by the agreement that the acceptance of the payments under the resolution of the executive committee and the giving of the monthly receipts in full should not constitute a substituted contract, which they did, and the general counsel was bound by his acceptance and receipt, and precluded from claiming under the original contract.

The parties to a written contract not under seal may at any time before breach thereof, by a new oral contract, waive, dissolve, or annul the written contract, or vary or qualify its terms, and thus make a new contract.

Where the president of a railroad corporation appointed a general counsel for five years at an agreed annual salary, and the executive committee, two months later, fixed a lower salary, but paid the general counsel for his services during the two months at the rate fixed by the president, and thereafter the general counsel accepted payment for his services at the reduced rate fixed by the executive committee, there was no breach of the president's contract such as would prevent the acceptance of the reduced rate fixed by the committee from constituting a valid substituted contract.

The mere fact that a new agreement was made after the breach of the original contract will not prevent the new agreement from being a valid substituted or modified contract, for where the modified contract has been acted upon by both parties, and fully performed by the party that broke the original contract, and in whose favor the contract was modified, it becomes binding on both parties, and the original contract is thereby discharged, unless it appears that such was not the intention of the parties.

ASSUMPSIT.  Pleas, the general issue with notice, and two pleas of accord and satisfaction.  Trial by jury at the June

Term, 1910, Lamoille County, *Butler,* J., presiding.    At the close of the evidence each party moved for a directed verdict. Verdict directed for the plaintiff for the amount of his claim, and judgment thereon.    The defendant excepted.    The opinion fully states the case.    This case has been once before in the Supreme Court, see 83 Vt. 415.    When the case came up the second time it was argued at the October Term, 1910, and after the announcement referred to in the opinion, made at the May Term, 1912, plaintiff asked, and was granted, a further hearing, which was had at the November Term, 1912.

*E. W. Lawrence, Alexander Dunnett,* and *R. W. Hurlburd* for the defendant.

Defendant's charter fixes the tenure or general counsel removable at the pleasure of the directors.    Defendant could not contract so as to limit this right to remove.    *Darrah* v. *Ice & Storage Co.,* 50 West Va. 417; *Town of Davis* v. *Filler,* 47 West Va. 413; *Rebadow* v. *Buffalo Savings Bank,* 117 N. Y. Supp. 282; *Brendon* v. *Worley,* 28 N. Y. Supp. 557; *People* v. *N. Y. etc.,* 51 N. Y. Supp. 420; *Hunter* v. *Sun Mutual Ins. Co.,* 26 La. Ann. 13; *Fowley* v. *Great Southern Telegraph & Telephone Co.,* 104 Ala. 752; *Trustees of Auburn Academy* v. *Strong,* Hopkins (N. Y.) 278.

Provision of section 15 of defendant's by-laws that the president shall appoint its general manager, general counsel, etc. Angell & Ames on Corporations (8th Ed.) §§115, 277, 279, 291; *Brewster* v. *Hartley,* 37 Cal. 15, 99 Am. Dec. 237; 5 Am. & Eng. Enc. of Law, p. 95; Thompson on Corporations, 1st Ed. §§1011, 1013; *St. Luke's Church* v. *Matthews,* 6 Am. Dec. 619; *King* v. *Bumstead,* 2 Barne & Adolphus 699; *Beaty* v. *Marine Ins. Co.,* 2 Johns. 109; *People* v. *Phillips,* 1 Denio 388; 10 Cyc. 355, 356; *Carney* v. *New York Life Ins. Co.,* 19 App. Div. 160, 45 Supp. 1103; Affirmed 162 N. Y. 453; *Laird* v. *Michigan Lubricator Co.,* 116 N. W. 536, 17 L. R. A. (N. S.) 177.

Plaintiff must show affirmatively that Dr. Webb in all of his acts by which he undertook to bind defendant, namely signing the instrument relied upon, ordering payment at the rate of $10,000 a year, and his talk with plaintiff in January, 1904, had authority to bind the defendant.    His office as president and as director raises no presumption that he had such authority.

*Lyndon Mills Co.* v. *Lyndon Institute,* 63 Vt. 581; *Stark Bank* v. *U. S. Pottery Co.,* 34 Vt. 144; *Hodges* v. *R. & B. R. R. Co.,* 29 Vt. 220; *Gumacho* v. *Hamilton etc. Co.,* 37 N. Y. Supp. 725; Cook on Corporations, §716; *Caldwell* v. *Life Assn.,* 65 N. Y. Supp. 826.

There is no presumption that any of the members of the executive committee or board of directors or any of the officers of the defendant, aside from plaintiff and Dr. Webb, had knowledge of the written instrument sued upon. *Brandon Bank* v. *Briggs' Assignee,* 70 Vt. 594; Thompson on Corporations, 1st. Ed. §§5310, 5318.

Plaintiff waived the provision of the alleged contract respecting salary and agreed to substitution of $6,000 per year. *Frost* v. *Insurance Co.,* 77 Vt. 407; *Railroad Company* v. *Langdon,* 45 Vt. 137; *Fay* v. *Flint,* 40 Vt. 316; *Dana* v. *Hancock,* 30 Vt. 616; *Sherwin* v. *R. & B. R. R. Co.,* 24 Vt. 347; *Lawrence* v. *Dole,* 11 Vt. 549; *Davenport* v. *Crowell,* 79 Vt. 419; *Aurora etc. Soc.* v. *Paddock,* 80 Ill. 263.

The receipts in full are an accord and satisfaction. *Mann* v. *Haley,* 79 Vt. 67; *Connecticut etc. Co.* v. *Brown,* 68 Vt. 239; *Baptist Convention* v. *Ladd,* 58 Vt. 95; *Bromley* v. *School District,* 47 Vt. 381; *Towslee* v. *Healey,* 39 Vt. 523; *Cole* v. *Champlain Trans. Co.,* 26 Vt. 87; *Abbott* v. *Wilmott,* 22 Vt. 437; *McDaniels* v. *Laffam,* 21 Vt. 222; *McGlynn* v. *Billings,* 16 Vt. 329; *Jordan* v. *St. No. Ry. Co.,* 83 N. W. 391.

*T. W. Moloney* and *R. E. Brown* for the plaintiff.

MUNSON, J. There has been a former hearing of this case, with an announcement of the views of the Judges who then sat. The briefs submitted at that hearing are before the Court as now constituted, with an additional brief from the plaintiff. This brief is framed largely as a reply to the views then expressed by the majority.

The suit is brought to recover a balance of $19,333.33, which the plaintiff claims to be due for his services as general counsel of the defendant; and this is conceded to be the sum due if the plaintiff is entitled to recover. Each party moved for a verdict at the close of the evidence, and the plaintiff had a directed verdict for the amount of his claim. The exceptions

state that the defendant claimed there was no question to be submitted to the jury.

The plaintiff's claim is based upon a writing executed by W. Seward Webb as president of the defendant company, which purports to appoint him general counsel of the company for five years at a salary of $10,000 and expenses. The defendant claims that under the statutes of this State and the by-laws of the company the president had no authority to make this appointment.

It is provided by P. S. 4262 that "no officer of a private corporation shall receive a salary unless the same is voted and the amount thereof fixed by the board of directors"; and that "an officer who appropriates to his own use any of the funds of such corporation, not voted by the directors, shall be deemed guilty of embezzlement." No. 187, Acts of 1902, an act in amendment of defendant's charter, which was approved October 22nd and took effect from its passage, provides that the board of directors shall be elected at an annual meeting of the company to hold office for the term of one year and until their successors are elected, and that such board shall choose from their number a president and one or more vice-presidents to hold office for a like term, and "shall appoint a clerk, treasurer, and all other needed officers to hold office during the pleasure of such board." A by-law of the defendant, adopted in October, 1902, provides that "the business of the company shall be conducted by the following named officers," and includes in the list named a general counsel. The list as embodied in the by-law parenthetically designates the president as elected by the board, the clerk and treasurer as appointed by the board, and the other officers named, including the general counsel, as appointed by the president.

The plaintiff claims that the general counsel is not an officer of the corporation within the meaning of P. S. 4262, and therefore not an officer whose salary must be authorized and fixed by a vote of the directors; and that he is not in the class of officers referred to in the charter amendment above recited, who are to be appointed by the board to hold office during its pleasure. The defendant contends that the general counsel is an officer of the corporation within the meaning of P. S. 4262, and also within the meaning of the charter amendment above recited; and that in so far as the by-law under-

takes to confer upon the president the power to appoint the general counsel and other officers it is in conflict with the charter and void.

The duties and authority of the general counsel are prescribed by a by-law. Under the supervision and subject to the approval of the president, he has general charge and control of the legal business and litigation of the company, and may retain or appoint associate counsel or legal representatives. He is to keep himself informed of the character and progress of legal proceedings and of all claims by and against the company or in which it is interested, and keep in his office a record of all actions in which the company is a party or is interested. No suit is to be instituted or settled otherwise than by his direction and subject to the approval of the president. He has charge of the settlement of claims for damages, and is assisted therein by an assistant claim agent, who is subject to his direction. He is to prepare opinions on any subject referred to him by the president, and supervise the preparation of all contracts and other documents to be executed by the company.

The points of difference which determine whether one is an officer or a mere employee have been considered mainly in cases involving the rights and liabilities of public servants. See note, 72 Am. Dec. 179. Most of the cases involving the status of the representatives of private corporations are cases where the statute required that service be made upon, or that some specific thing be done by, an officer of the corporation; and it has usually been held that a general agent or general manager is not such an officer. Note, 5 Ann. Cas. 223; *Farmers L. & T. Co.* v. *Warring*, 20 Wis. 290; *Wheeler etc. Mfg. Co.* v. *Lawson*, 57 Wis. 400, 15 N. W. 388; *Meton* v. *Isham Wagon Co.*, 4 N. Y. Supp. 215. This view was taken in *Vardeman* v. *Penn. Mutual L. Ins. Co.*, 125 Ga. 117, 54 S. E. 66, 5 Ann. Cas. 221, where an insurance policy required that any waiver of its conditions be signed by an officer of the company, and the waiver had been signed by a general agent. In disposing of this case the court referred to one of its previous decisions, where it was held that the term ''general manager'' as applied to one representing a corporation, and especially a railroad corporation, imported an agent of very extensive authority,— and said it was not ruled that even the term ''general manager''

would import that the person holding that position was necessarily an officer of the company.

The list in which the general counsel appears, as contained in the by-law, begins with the general manager and includes such officials as the purchasing agent, superintendent of motive power, and general freight agent. This classification bears strongly against the theory of the defendant. It is obvious that the superintendent of motive power, for instance, is not within the ordinary legal conception of a corporate officer. His office has no relation to a corporate organization, and his duties are wholly those of an employee. The nature of an official's position has sometimes been tested by referring to the doctrine of mandamus. It seems clear that an exclusion of the plaintiff from his office, whatever the form given it, would have been in essence a breach of contract, and that his remedy would have been a suit for damages, and not mandamus for a reinstatement. We think the plaintiff was not an officer of the defendant company in the usual and proper sense of the term.

But the defendant contends that the general counsel should be held to be an officer of the corporation within the meaning of P. S. 4262, whatever the technical construction of the term may be. It is said that the purpose of this section is to protect the stockholders and creditors of a corporation by regulating the salaries of its officers, and that the word "officer" should be so construed as to effectuate the purpose of the Legislature. It is argued that the by-law above referred to expressly designates the general counsel as one of the officers who shall conduct the defendant's business, and that any construction of the statute which would exclude the general counsel from its operation would limit its effect to the president and treasurer and thus strip it of all its force. We think, however, that the distinction made between an officer of the corporation and an employee must prevail in the construction of this provision. In the absence of controlling phraseology, the statute may well be held to apply to the officers who have the management and control of the corporation and its funds through the exercise of corporate functions and not to persons whose position and duties are merely those of an employee.

But it is said that the plaintiff was a director for some time when serving as general counsel, and as such was unquestion-

ably an officer of the corporation; and that the statute is broad enough to prevent his receiving the money of the corporation for his services in any capacity while a director without the payment having been authorized by a vote of the board. But the law recognizes the right of an officer of a corporation to contract with the corporation in his individual capacity, and his right to receive compensation for his services in that capacity without a vote of the directors must depend upon the nature of the relation established by his undertaking.

It is argued further that the charter of the defendant as amended by the act of 1902 provides that the board of directors "shall appoint a clerk, treasurer, and all other needed officers," and that the general counsel is manifestly an officer of the corporation within the meaning of the term as used here. The comprehensive language of the provision makes in favor of this view; nevertheless we think that the Legislature referred to officers in the corporate sense, and that the meaning of the provision is the same as if it read, "other needed officers of like character." This accords with the general scope of the act, which is one relating solely to the organization of the company, —the number of the directors, the filling of vacancies in the board, the officers chosen by the board from their number, and those otherwise appointed by the board. The argument of the defendant assumes that the president, vice-presidents, clerk and treasurer are the only officers of the corporation in the sense of the term as above construed, and claims that as these are specifically named, the words "other needed officers" must refer to the list which includes the general counsel. But an assistant treasurer, or other like official, might be deemed a needed officer and be provided for by a by-law; and these would be officers of the same class as those named in the act. This would afford a field for the operation of the clause in question as we construe it; and with the scope of the act thus limited the by-law is not in conflict with it.

This leaves the power of appointing the general counsel with the president, and brings us to the consideration of further claims. The plaintiff contends that the power of appointment carries with it the power of fixing the compensation, and cites, among other cases, *Waite* v. *Windham Co. Mining Co.*, 37 Vt. 608. The case is not exactly in point, but the reasoning of the opinion supports the contention. There the directors had the

power. of appointment; and it was said that in the absence
of any prohibition in the charter or by-laws, or any other pro-
vision for fixing the compensation, it must be considered that
the power to fix the compensation belonged to the directors
as an incident of the power of appointment, as otherwise they
might be wholly unable to fill the office. The defendant argues
that the reason given for this holding can have no application
where the appointment rests with the president instead of the
directors, inasmuch as the president can make the appointment,
and the appointee have his compensation fixed by the directors.
It may be said on the other hand that a power of appointment
shorn of the power to fix the compensation comes short of a
full authority. If the question thus presented were to be
passed upon merely as having reference to an appointment
limited by the president's term, it might be necessary to ex-
amine several of the by-laws to determine the intent of the
framers. But another feature of the plaintiff's claim must
come into the discussion here.

The right to fix the compensation, as claimed in this case,
involves the right to fix it for a term of years beyond the term
of the officer making the appointment. The defendant contends
that if the president had the power of appointment, and could
determine the amount of the incumbent's salary, he could not
bind the company thereby for a period longer than his term.
There are undoubtedly many matters regarding which the
proper corporate officer can make contracts not limited by his
term. The requirements of the business authorized by the
charter may be such that authority to contract for a longer
period will be implied. But the reasons for implying this
authority are seldom found in connection with contracts for
professional or other personal services; and agreements of this
character for a period exceeding the official term, when not
supported by an express authorization, are sustained only upon
special grounds. In *Carney* v. *New York Life Ins. Co.*, 162 N. Y.
453, 57 N. E. 78, 49 L. R. A. 471, 76 Am. St. Rep. 347, the execu-
tive officers of the company,—assuming to act under a by-law
which authorized them to appoint, remove, and fix the compensa-
tion of, employees,—contracted with a physician for his services
during life; and the contract was held to be unreasonable, and
one not contemplated by the by-law. In disposing of the case
the court said: "In construing the action of the board in

adopting the by-law in question we must assume that they had in mind the provisions of the statute fixing their terms of office and that, at the expiration of that period, other persons may be chosen in their places, upon whom would rest the responsibility of the conduct and management of the business of the company, and that they had no right to interfere with the powers of future boards of trustees by imposing upon them unreasonable contracts.''

The plaintiff refers in this connection to two of our decisions which, when considered together, clearly indicate the relation which the business to be provided for sustains to the power to contract. In *Royalton* v. *Turnpike Co.,* 14 Vt. 311, the defendant agreed to lay out and support its road across a bridge belonging to the plaintiff and support the bridge as a part of its road for a term of twenty years, in consideration of the plaintiff's agreement to pay the defendant towards the support of the bridge twenty-five dollars annually during such term. The plaintiff contracted by a vote in town meeting, and the defendant through the action of a director who was the sole director for the year. It was claimed in defence that neither the town nor the corporation could bind itself for more than a year, but the plaintiff recovered. It was said of the defendant company that the building and repairing of its road was the object of its creation, and that the contract made was well within its discretion; that the director who made the contract had authority under the by-laws ''to make all necessary contracts, on behalf of the corporation, for the purpose of carrying into effect the objects of the grant,'' and that he had during his term of office, in express words, the entire power of the corporation. In *Chittenden* v. *School District,* 56 Vt. 551, the prudential committee of the defendant hired the plaintiff to teach for one year, beginning with the fall term. The committee elected the following spring repudiated the contract, but the plaintiff recovered for the year. The opinion takes note of the fact that the school year as regards the service of teachers begins with the fall term, and says that when it becomes necessary the committee may contract for the service of a teacher that will lap over a reasonable time upon the official year of his successor, but that it would be too much to say that he could contract for a service to be wholly rendered during the next official term.

In this case the president, holding his office for one year by appointment of the directors, who were themselves chosen for a year, appoints a general counsel for a term of five years, and fixes his salary for the whole period. The by-law before referred to, which contains the list of officers by whom the business of the company is to be conducted, designates the clerk and treasurer as appointees of the board, and gives the following as the list appointed by the president: general manager, general counsel, auditor, purchasing agent, superintendent, chief engineer, superintendent of motive power and rolling stock, general freight agent, and general passenger agent. So the appointees of the president constitute the entire executive force of the road; and it is argued by defendant's counsel that if the president could appoint a general counsel for five years, and fix his compensation for the whole period, he could secure the same term and compensation to all nine of his appointees, and thus determine the membership and salaries of this executive force for years after his own term had expired. We leave the discussion here without bringing the matter to determination; and the necessity for a further consideration of the subject will depend upon the view that may be taken of certain claims made by the defendant.

The consideration of the remainder of the case will require a further statement of facts, and a reference to certain by-laws which relate to the powers of other officials who have taken action regarding the plaintiff's compensation.

The by-laws of the defendant provide for an executive committee, to consist of the president and three other directors chosen by the president; and prescribe the relative authority of the president and executive committee. The president is to have the general supervision and control of all the business, property and affairs of the company, and of all its officers, agents and employees, subject to the board of directors and executive committee. The executive committee, in the recess of the board of directors, and in the absence of specific instructions from the board, has full power and authority to manage and control all the business, affairs and property of the company.

Dr. Webb ceased to be president of the defendant company in January, 1905. The plaintiff's appointment for five years at a salary of $10,000 was to date from November 1st, 1903.

He had been doing legal work for the defendant before that time, and it was provided in this agreement that he should be paid for his services for the previous ten months at the same rate. The agreement called for monthly payments of salary and expenses. December 9th, 1903, plaintiff received a payment of $5,833.33, which was the balance due for the ten months, and January 5th, 1904, he received $1,666.66 as his salary for the months of November and December, 1903. Both payments were on the basis of an annual salary of $10,000.

The executive committee, at a meeting held December 1st, 1903, on receiving information regarding the arrangement made by Dr. Webb, resolved that the amount agreed upon was an excessive compensation for the service rendered, and appointed Mr. Burden, one of their number to confer with Dr. Webb and recommend a salary not in excess of $5,000. At a meeting held December 30, 1903, a report of this conference was made by Dr. Webb in person, Mr. Burden also being present; and it was thereupon resolved that the salary of the general counsel be fixed at $6,000 a year, and that his expenses while at Rutland should not be charged against the company. At a meeting of the board of directors held in October, 1904, at which the plaintiff was present, a resolution was adopted confirming and approving the minutes of the executive committee covering the two meetings of the previous December.

After the vote of the executive committee fixing the plaintiff's salary at $6,000, and until September, 1908, at the end of each month defendant sent plaintiff a check for $500, with a voucher stating that it was for that month's salary as general counsel, and containing a receipt in full of that account, which, according to the practice and custom of the defendant, plaintiff was to sign and return to the defendant; and plaintiff accepted these checks, and drew the money thereon, and signed the receipts and sent them to the defendant. After June, 1905, the words "and in full to date" were added to the monthly vouchers and were in the vouchers as signed and returned. The plaintiff resigned as general counsel in September, 1908, but continued to perform legal services for the defendant through that and the following month, receiving the same compensation as before and returning vouchers which contained receipts in full to their respective dates. From time to time after January 1st, 1904, plaintiff rendered to defendant expense accounts, omitting there-

from any charges on account of expenses while at Rutland, and defendant sent him checks therefor, receiving from him receipts in full.

Soon after the first day of January, 1904, Vice-President Jarvis sent the plaintiff a letter informing him of the action taken by the executive committee regarding his salary.    This letter was received at the plaintiff's office in his absence, and in accordance with the custom of the office his stenographer opened and read the letter, and placed it upon the plaintiff's desk, with other correspondence, to await his return. The plaintiff has no recollection of having seen such a letter. In the latter part of the month, Dr. Webb and the plaintiff had a talk about the action of the executive committee, in which the plaintiff protested against the action taken, and Webb told the plaintiff to take whatever might be paid him by defendant, and that his salary would be paid in full according to the contract, and that he himself would pay plaintiff's expenses while at Rutland.    The exceptions state that there was no evidence that the defendant, or any of its officers, agents, or employees, other than the participants therein, had any knowledge concerning this talk until after the plaintiff's resignation as general counsel, unless such knowledge can be inferred from the facts and circumstances disclosed by the testimony; and also state that there was no evidence that the defendant or any of its officers, agents or employees, other than Webb and the plaintiff, had knowledge of the instrument of appointment until after plaintiff's resignation as general counsel, unless the references to an agreement and contract contained in plaintiff's voucher and letter of November 5th, 1903, charge the defendant or its officers, agents or employees with such knowledge, or unless such knowledge can be inferred from the facts and circumstances disclosed by the testimony.    The letter referred to was one written by the plaintiff to Dr. Webb, enclosing a voucher for his salary to October 30th, 1903, with a request that .Dr. Webb approve it and return it to the auditor, and also requesting him to notify the auditor of their contract and to ask him to put his name on the pay-roll, so that he would have no occasion to ask anybody's approval from month to month.

It appears from the recital preceding the first resolution of the executive committee that the action of that committee was based on the plaintiff's letter and voucher of November

fifth, and a letter of Dr. Webb enclosing these to Vice-President Jarvis. The letter of Dr. Webb was offered by the defendant, and was excluded on the plaintiff's objection. The plaintiff's letter to Webb refers to the voucher as enclosed ''agreeably to our arrangement,'' and assumes the existence of a contract between them, under which the plaintiff will be entitled to monthly payments. The voucher is for the balance due for ten months' services from January 1st to October 30th, 1903, computed on the basis of a $10,000 salary, and has upon it under the signature of Dr. Webb the words ''as per agreement made last spring.'' The resolution adopted discloses an understanding that the plaintiff's compensation as fixed by the president was $10,000 per annum. All this is entirely consistent with an arrangement for an indefinite period, which is terminable at pleasure, but is expected to continue from year to year. We have seen that Dr. Webb was present at the meeting of December 30th, and made a report of his conference with Mr. Burden; and it appears from the record that the resolution fixing the plaintiff's salary at $6,000 was adopted after discussion. It cannot be inferred that the existence of a written contract or a contract for a definite period was disclosed in these proceedings, for the testimony of Mr. Jarvis, who was in attendance at the meeting and is the only witness to what occurred, limits the knowledge he had at the time he approved the vouchers for November and December to that derived from the vouchers themselves and from the previous voucher and accompanying letters.

We find nothing in the facts and circumstances disclosed by the testimony from which it can be inferred that the talk between Dr. Webb and the plaintiff relative to the action of the executive committee and the payment of the plaintiff's salary became known to any other officer or agent of the defendant company before the plaintiff's resignation as general counsel. We find nothing in the facts and circumstances disclosed by the testimony from which it can be inferred that the defendant, or any of its officers, agents, or employees, other than Webb and the plaintiff, had knowledge of the instrument of appointment before the plaintiff's resignation as general counsel. Nor do we think the references to an agreement and contract contained in plaintiff's voucher and letter of November 5th, 1903, can charge the corporation or its officers with knowl-

edge of a writing which was drawn and executed at · a later date. So the remaining questions stand for consideration with these matters negatived.

The plaintiff claims that, even if there was a lack of antecedent authority, the payments of December 9th, 1903, and January 5th, 1904, made on the basis of a $10,000 salary, were a ratification of the contract as made by the president. It may not be necessary to pass upon the question of ratification, but the facts connected with the making of these payments have a bearing upon the matters remaining for consideration. The payments were for the ten months which preceded the five years' service in question, and for the first two months of the five year period. The first payment was made on the approval of President Webb and of Mr. Jarvis as general manager. The last was made on the approval of the general manager alone. There is no evidence tending to show that the general manager approved the vouchers by direction or procurement of the executive committee. It could not be claimed that the executive committee ratified the contract, for plaintiff's counsel stated on the trial that they made no such claim, and procured the exclusion of evidence on that ground. Whatever the source and extent of Mr. Jarvis' authority, he acted without full knowledge of the contract. He testifies that the only knowledge he had was that afforded by the vouchers and letters, and there is nothing in the case that tends to show the contrary. The entry on the first voucher, ''as per agreement made last spring,'' gave him no information as to the agreement actually made. He had no knowledge that the payments he authorized were claimed under a contract which assumed to bind the corporation for five years. So the only officer of the corporation who acted in this matter with full knowledge of the contract was the officer who made the contract.

We do not overlook the fact that the plaintiff argues that the executive committee was in possession of all the facts regarding the arrangement before the payments were made. The claim is based upon the recital in the resolution of December first, but the language of the recital does not warrant the statement. The same clause in which the committee speaks of its being advised of the arrangement that had been entered into, names the sources of its information—the voucher and correspondence from President Webb submitted by Vice-President Jarvis.

Nor does the case disclose grounds for presuming that the executive committee had this knowledge. The additional brief objects to any assumption that the contract and subsequent promise were kept secret, and refers to the plaintiff's request to Dr. Webb that he notify the auditor of the contract and have his name put on the pay-roll. But when Dr. Webb failed to accede to this request the plaintiff accepted the situation, and made no disclosure of these matters to anyone. It is said that when the executive committee sent one of their number to confer with Dr. Webb about the plaintiff's salary, it became Webb's duty to disclose the whole contract, and that the presumption is that he did so. But Dr. Webb's position was that he owed no duty to the executive committee regarding the plaintiff's contract. It is said that good faith required the disclosure, and that it is to be presumed that an agent acts in good faith. But the plaintiff's main argument stands upon the theory that in this matter Dr. Webb was not a mere agent of the corporation but the corporation itself. And it is said elsewhere in the brief that the attempted interference of the executive committee was nothing that Dr. Webb was bound to · recognize.

In proceeding with the consideration of the case we assume that the contract as made by the president was valid. The defence made to the case as thus presented is based on the plaintiff's acceptance of other terms made by the executive committee. The president fixed the plaintiff's salary at $10,000. The executive committee thereupon voted that the salary be $6,000, and tendered payment accordingly. There was thus a conflict of authority between officers of the defendant company, resulting from different constructions of its by-laws. The executive committee could have withheld payment, and the plaintiff could have tested the validity of his contract by legal proceedings. There is nothing in the case that indicates that the executive committee was acting in bad faith. Its claim of ultimate authority over the president's action regarding salaries was one that could be made in good faith and with color of right. In this situation the plaintiff accepted the compensation offered by the executive committee. The ground of his acceptance, as given in his testimony regarding his interview with Dr. Webb, is as follows: "After I expressed my unwillingness to go on with the contract at that rate, he

says: 'You go along and perform this contract, and you shall be paid precisely as your contract calls for.' * * * I said to him that when the voucher came in for the next monthly installment it would be for a smaller sum, and I says: 'It won't answer for me to accept that smaller sum, because they will claim that I have bound myself by so doing.' He says: 'You accept whatever they pay, * * and I say to you that your salary shall be paid in full precisely according to your contract'; and in consideration of that I accepted the smaller amount.''

There can be no misapprehension regarding the plaintiff's position. It is claimed in the plaintiff's brief, and was asserted in oral argument, that Dr. Webb was in this matter the Railroad Company, made such by its by-laws, and that if he was not the Railroad Company the plaintiff has no standing in court. His position is illustrated in the brief by supposing, as an exact parallel, that this was a contract between the plaintiff and Webb in his individual capacity, and that Webb had offered the plaintiff his monthly wages at a reduced rate, saying: I know I agreed to pay you at a higher rate, ''but you accept this sum and it shall not affect your rights, and in the end you shall receive the agreed salary.'' But the first assumption destroys the parallel; for in the actual case Webb was not acting in an individual capacity and promising payment from his own funds. He was acting in a fiduciary relation, and whatever his power to appoint and contract, in the matters affecting these payments he was acting in connection with others who in various capacities were in charge of the same interests.

The defendant contends that even if the contract as made by the president was valid, the subsequent receipt of payments made on the basis of a $6,000 salary and tendered in full of each monthly instalment and finally in full to date, was a waiver of the original provision as to compensation and the substitution of another amount, or if not, that it was an accord and satisfaction of a disputed claim. The plaintiff's original brief treated the defendant's claim as one of accord and satisfaction, and replied that an acceptance of anything less than the full amount is no obstacle to a full recovery. Treating the subject as thus presented, the announced opinion of the majority based its conclusions upon the ground of accord and satisfaction

as well as upon the ground of a modified or substituted contract. The plaintiff's additional brief does not question the soundness of the principles then stated, but insists that they have no application to the case. It sets up the question whether the plaintiff consented to the modification of his contract, either by way of compromise, accord and satisfaction, substituted agreement, or otherwise, and says that none of these defences can be established because the president "agreed that the plaintiff's conduct should not affect his rights." Upon this statement of the question, the ground previously covered may well be restricted, and the considerations applicable only to the defence of accord and satisfaction will be omitted from the discussion.

The defendant, while arguing fully the defences of estoppel and accord and satisfaction, places itself first upon the ground of a modified contract. The plaintiff contends that this defence was not insisted upon below, but was in fact disclaimed; and quotes from the transcript in support of his statement. It appears that when plaintiff was asked by his counsel to give the conversation he had with Dr. Webb regarding the action of the executive committee, defendant's counsel objected, and on being inquired of by the court as to the ground of his objection, said in substance that Dr. Webb had no authority to make any agreement about the salary. The plaintiff treats this claim as precluding other defences. It certainly was not so treated by the court. When the defendant offered the record of the meetings of December first and thirtieth, the court, on the suggestion of plaintiff's counsel, asked the purpose of the offer, and defendant's counsel replied: "The purpose is to show that this executive board, which was acting in recess of the board of directors, made a contract fixing the salary of Judge Powers, and that he accepted it—the purpose of it is plain enough." The court seems to have so considered it, for it asked: "May they not show that this contract has been substituted for * * * the other?" This was followed by some discussion between plaintiff's counsel and the court, in which counsel protested against the view suggested by the court, and the court expressed itself further in the same line; after which the evidence was received.

The law of modified or substituted contracts is well settled. The parties to a written contract not under seal, at any time

before a breach of it, by a new contract not in writing, may waive, dissolve or annul the former agreement, or in any manner add to, subtract from, or vary or qualify its terms, and thus make a new contract. *Flanders* v. *Fay*, 40 Vt. 316; *Frost* v. *Insurance Co.*, 77 Vt. 407, 60 Atl. 803. "Either party may waive, either absolutely or conditionally, any stipulation in his favor, at any time before a breach." *Lawrence* v. *Dole*, 11 Vt. 549, 555. It is not necessary that there be an express agreement of modification or substitution; a new agreement may be implied from the conduct of the parties. See *Davenport* v. *Crowell*, 79 Vt. 419, 434, 65 Atl. 557.

The contract which is claimed to have been modified by the action of the executive committee and the acquiesence of the plaintiff was at the time of such action a continuing contract in process of performance. It was a contract by which the services of the plaintiff were engaged for a term of years at an annual salary, a proportionate installment of which was to be paid at the end of each month for the services of that month. The vote of the executive committee fixing the plaintiff's salary at $6,000 was taken December 30th, and the payment of January 5th covered the salary for December at the original rate. At the end of January defendant sent plaintiff a check for that month at the rate fixed by the vote. So there was no breach of the original contract, other than the sending of the check for the reduced amount. But this can hardly be treated as a breach, for the check was accepted and receipted for as payment in full. There was no break in continuity of performance in connection with the change.

It has sufficiently appeared that a contract of unquestioned validity can be modified at any time before a breach by a waiver of the right of one party acted upon by the other. But the fact that the new agreement is entered into after a breach of the original one will not necessarily defeat the claim of the party originally in default. When a modified contract has been acted upon by both parties and fully performed by the party which broke the original contract and in whose favor that contract was modified, it becomes binding on both parties, and the original contract is thereby discharged, unless it appears that such was not the intention of the parties. *Agel* v. *Patch Mfg. Co.*, 77 Vt. 13, 58 Atl. 792. So if it be considered that there was a breach of the original agreement on the part of

this defendant, it will not change the result. The modified contract has been acted upon, and in fact fully performed, by both parties, and has thus become binding on both. This is not the case of an altered agreement unperformed, where the party benefited by the change in seeking to enforce the new agreement. It is the case of an altered agreement fully executed, where the party losing by the change, after accepting performance in accordance with the new agreement, seeks a further recovery by virtue of the original agreement. Such a recovery is precluded by the doctrine of the case just cited.

The plaintiff meets this defence by saying that the by-laws invested Dr. Webb with all the powers of the corporation as regards the matter in controversy, and that Dr. Webb promised him that his acceptance of the smaller sum offered him by the executive committee should not affect his rights. According to this claim, the president's power of appointment not only carried with it the power of appointing for a series of terms beyond his own, and of determining the compensation for the whole period, but also carried with it the power of relieving the plaintiff from the ordinary legal consequences of his subsequent conduct, and of neutralizing completely the established legal effect of such action as might be concurred in by the plaintiff and the executive committee. Upon this theory, the authority of the president to make the contract would preclude other representatives of the corporation from effectively challenging its validity; and no acceptance of a sum tendered the plaintiff by direction of the executive committee could amount to an accord and satisfaction; no conduct of the plaintiff relied upon by the defendant's officers could be made the basis of an estoppel; and no agreement between the plaintiff and the executive committee could effect a compromise or constitute a modified or substituted contract. This would be a complete reversal of the whole law of the subject because of the agencies through which the corporation must necessarily act. It seems clear that a corporation may become entitled, through the action of its proper officers, to the protection which the law affords in cases of disputed claims. The fact that the controverted matter grew out of a conflict of authority among its officers ought not to deprive a corporation of this benefit. If there was any corporate authority that could take cognizance of this matter and make a binding adjustment with the plaintiff

it must have been the executive committee. In the recess of the board of directors that committee had "full power and authority to manage and control all the business, affairs and property of the company."

It may be suggested that if the contract made by the president is treated as valid, the action of the executive committee in derogation of it must be treated as invalid, and that an invalid act cannot enable the corporation to contest a valid contract. This suggestion presents no difficulty when it is remembered that the vote of the committee is relied upon merely as the basis of the action taken by the plaintiff. In this branch of the case we are not concerned with the correctness of the claims on which the action of either party was based.

It is said in support of the plaintiff's position that no modification of the contract could arise from the action taken, because both parties to the contract—meaning the plaintiff and Dr. Webb as the corporation—agreed that it should not arise. The oral promise of the president is relied upon to eliminate the executive committee as a factor in the determination of the plaintiff's rights. The plaintiff's claim is, in essence, and almost in words, that although he gave the executive committee his consent to the change by word and act, there was no consent in law, because the action of the president deprived the executive committee of the power to receive his consent. And this is said of a committee which had all the general powers of the board of directors when the board was not in session, and said in the absence of any by-law undertaking to give the president the power claimed. The inability of the president to deprive the corporation of a benefit of this nature, secured to it by a committee thus empowered, is sufficiently apparent from the general rule that the president of a corporation has no authority to relinquish its claims. In *Potts* v. *Wallace*, 146 U. S. 689, 36 L. ed. 1135, 13 Sup. Ct. 196, the defendant claimed that he had been discharged from the payment of his subscription to the capital stock of the company while it was solvent, by a refusal of the treasurer to accept it, which was made by order of the president; and the court said that the action of the president was not the action of the company, and did not bind it; that "the president had no legal power or authority to deplete the coffers of the company by instructing the treasurer to refuse to accept" the money when tendered. No more can

the president of a corporation deplete its treasury by an undisclosed promise to one of his appointees which would ultimately deprive the company of the benefit of a waiver lawfully procured in reduction of its expenses.

The plaintiff invites special attention to *Kelley* v. *Jersey City etc. Co.*, 74 N. J. L. 734, 67 Atl. 108, as a case somewhat similar to this. The plaintiff in that case was employed at $100 a month, as time-keeper on a construction job, by Connolly, who was a director of the defendant company and general manager of this work, and who had authority to employ the men and fix their wages, except that when a question was raised the executive committee, of which Connolly was one, must approve. After commencing work, the plaintiff found that he was carried on the pay-roll at $75 a month, and protested to the bookkeeper who had charge of the pay-roll. Connolly was then sick and absent, and the bookkeeper advised the plaintiff to accept that sum until Connolly returned. When Connolly returned, two months later, he told plaintiff that he was hired at $100, but advised him to accept the amount on the pay-roll, as they had got things so mixed up, and promised him full payment at the completion of the work. The plaintiff remained until the work was finished, a period of two years, receiving $75 each month, and afterwards sued for the balance and recovered. The court based its decision in part upon the fact that the plaintiff received the payments under protest to the bookkeeper who had charge of the pay-roll. If the plaintiff in this case had received the reduced payments under protest made to the officials who approved his bills, or to the treasurer who paid them, a different question would have been presented. It also appears from the opinion that there was no evidence that the plaintiff had knowledge of any limitation upon Connolly's power to fix the wages, and nothing to show that the plaintiff was in any way connected with the defendant corporation so as to be charged with such knowledge. The plaintiff in this case was the legal adviser of the corporation, an official familiar with its by-laws and course of business, who was serving as a director at the time of the change in question, and who had served as a member of the executive committee.

The plaintiff also cites in support of his contention *Kendrick* v. *Visage*, 88 Ga. 275, 14 S. E. 612. Here a firm engaged in mining operations, with Nixon, one of the partners, as

manager of the work, reduced the price it had been paying its mining contractors. Visage, who had a contract to cut to certain bounds, told Nixon he would not work for the reduced price and would insist upon the contract. Nixon told him to go on, and he would see him later, which he did not do. The firm paid Visage each month at the reduced rate, and Visage said nothing at any time about the additional amount. He afterwards brought suit for the balance and recovered. The case was tried by jury, and is not very clearly presented, but assuming it to be all that the plaintiff claims for it, it falls short of being an authority here. It would have been more nearly in point if the other members of the firm had learned of the facts which were the basis of the contractor's claim, and had thereupon questioned the authority of Nixon to continue his compensation at the old rate, and had tendered the monthly payments at the reduced rate as payments in full, and taken receipts for them as such.

We find nothing in the plaintiff's argument or authorities which seems to us to throw doubt upon the conclusion already indicated; and the determinative feature of the case may now be briefly presented in a more connected form.

The defendant's treasurer was an appointee of the board of directors, and was removable at pleasure. The board not being in session at the time the action in question was taken, the executive committee had full power and authority to manage and control all the business, affairs and property of the corporation. This committee challenged the president's right to determine the amount of the plaintiff's salary, and by their resolution of December 30th fixed his salary at $6,000 and provided that his expenses while at Rutland should not be charged against the company. From this time on everything proceeded in accordance with the resolution. The expenses while at Rutland disappeared from the bills rendered by the plaintiff. The check for the January instalment of the plaintiff's salary, and the accompanying voucher submitted for his signature, came at the reduced rate, as the plaintiff had anticipated in his conversation with Dr. Webb. The check was taken and the voucher signed and returned without objection, and without suggestion of an inconsistent ulterior purpose. Every month for nearly five years the plaintiff received and used a check for the monthly instalment of his salary at the reduced rate,

and signed and returned a voucher which in terms acknowledged its receipt as payment in full. These remittances were made and the receipts returned through the proper corporate channels, and to all corporate inspection the evidences of the company's transactions with the plaintiff were complete and correct. But the plaintiff says that his action in this respect cannot be treated as a waiver of his right to the original compensation and an acceptance of the checks as payments in full, because he had the promise of the president that his acceptance of the smaller sum should not prevent his ultimate recovery of the unpaid balance. In other words, it is claimed that the committee which was the governing board of the corporation, and controlled the treasurer and the treasury, could not, as against an undisclosed assurance of the president, make a valid and effective acceptance of a waiver which left in the treasury, $4,000 annually.

The conversation relied upon to sustain this claim shows that both the president and the plaintiff had knowledge of the change made by the executive committee at its inception, and that each knew that the other had this knowledge. Having this mutual understanding of the situation, the president directs the plaintiff to proceed for five years in a course of conduct at variance with the official action of the executive committee of which he is a member and of the disbursing officers of the corporation which is under his general oversight and control; and the plaintiff proceeds in reliance upon this direction. Finally, his resignation being requested in connection with a change of ownership, the plaintiff produces the written agreement of the president, and discloses his subsequent oral promise, and seeks to recover the balance called for by the writing. If the plaintiff is right as to the effect of these agreements, their presentation nullifies the defendant's entire system of audits, vouchers and accounting,—a system which is designed to afford checks on official action, safeguards to the treasury, and authentic evidences of financial standing. There is nothing in the by-laws that extends the power of the president to this limit. On the contrary, his supervision and control of the business, property and affairs of the company, and of its officers, agents and employees, is expressly made subject to the board of directors and executive committee. The legal effect of the action taken by the executive committee and the plaintiff could not be

contemporaneously avoided by an assurance of the president not communicated to any officer of the corporation charged with the duty of payment.

*Judgment reversed and judgment for defendant.*

MILES, Superior Judge, dissenting.   It is not my intention to write a dissenting opinion in this case, but simply to state briefly some of the grounds upon which I base my dissent, that it may not appear that my failure to concur with the majority· is without some substantial authority.

There is no question of fraud, accord and satisfaction, estoppel or other special defence in the case, or at least as the majority opinion leaves it, except that of a substituted contract for the one made by the president who had the right to make the contract upon which the plaintiff sues, because the same was reasonable, and was within the power of the corporation to make. *Royalton* v. *Royalton Turnpike Co.*, 14 Vt. 311; *Hunneman* v. *Fire District*, 37 Vt. 40; *Wail* v. *Windham County Mining Co.*, 37 Vt. 608; *Carney* v. *New York Life Ins. Co.*, 162 N. Y. 453, 57 N. E. 78, 49 L. R. A. 471, 76 Am. St. Rep. 347, cited by the majority.   It was reasonable, for no corporation would wish to employ an attorney for its general counsel who could afford to give up his general practice for not more than one year's employment, and no attorney capable of acting in that capacity would relinquish his general practice for such a term.   The argument of the majority is to the effect that the president had the power to make it, and, in their conclusions finally made, they assume that he had the power to make it and that it was a valid contract for the full term.

The plaintiff's contract made with the president being a valid contract, the burden was upon the defendant to show the substituted contract.   That was a question of fact and not of law, and was for the determination by the trier of fact.   Both parties at the close of the evidence moved for a verdict, and, upon inquiry by the court, stated that there was nothing for the jury.   This was a submission of the question of fact in dispute to the court; *Davis* v. *St. Albans*, 42 Vt. 585; *Robinson* v. *Larabee*, 58 Vt. 652, 5 Atl. 512; *Mascott* v. *Ins. Co.*, 69 Vt. 116, 37 Atl. 255; and the verdict should be upheld if there is any

evidence to sustain it; *Robinson* v. *Larabee, supra; Mascott* v. *Ins. Co., supra.*

There was evidence to sustain it, viz.: That the president could and did make the contract by virtue of the power specially vested in him by the by-laws; that there was no evidence of special power vested in the executive committee by the by-laws or elsewhere, giving them authority to make or change a contract with the general counsel; that there was no evidence tending to show any consideration for the substituted contract, and the evidence tended to show that there was no meeting of the minds of the contracting parties, and the evidence further tended to show, that the plaintiff went on and performed the contract as originally agreed upon and in no different manner, varied only by the plaintiff in that he forbore to collect his wages as provided for in the original contract.

The receipts in full of the plaintiff, his failure to insist upon payment in full at the end of each month and his failure to notify somebody that he did not assent to the action of the executive committee, is made the basis upon which the majority hold that the plaintiff entered into a substituted contract. That without explanation or contradiction might be sufficient to raise an implied substitution of contract and justify the conclusion reached by the majority, but it is not conclusive to the exclusion of contradiction or explanation.

In the first place, the plaintiff did give notice to the one with whom he made the contract that he would not consent to the change of compensation, and the case is barren of any testimony that he ever did consent, except the receipts, and those are open to explanation, and even contradiction. *Burnap* v. *Patridge,* 3 Vt. 144; *Giddings* v. *Munson,* 4 Vt. 308; *Sparhawk* v. *Admr. of Buell et al.,* 9 Vt. 41; *McDaniels* v. *Lapham,* 21 Vt. 222; *Hitt* v. *Slocum,* 37 Vt. 524; *Earle* v. *Wallingford,* 44 Vt. 367; *Bennett* v. *Flanagan,* 54 Vt. 549; and other cases in Vermont unnecessary to quote, as the foregoing clearly show the settled law of the State.

The receipt and the acts of the plaintiff relied upon by the defendant are fully explained by what took place between the plaintiff and the president when the plaintiff first learned of the vote of the executive committee. The plaintiff said: ''I can't perform the work of the general counsel for six thousand

dollars, I can do better," to which the president replied: "You go along with the contract at that rate and perform this contract and you shall be-paid precisely as your contract calls for." The plaintiff in this same conversation further said: "When the vouchers come in for the next monthly installment it will be for a smaller sum and it won't answer for me to accept that smaller sum, because they will claim that I have bound myself by so doing." To this the president replied: "You accept whatever they pay, no matter if it is no more than ten dollars and I say to you, that your salary shall be paid in full precisely according to the contract." This was undisputed, and at the time this took place between the plaintiff and the president, the president was the owner of a majority of the stock of the defendant company.

It is upon the strength of the foregoing that the majority hold that the court below erred in finding that the original contract still existed and in rendering judgment upon such finding, and that it should have found that a substituted contract was made taking the place of the original contract. With this view I cannot concur and therefore dissent, not only for the reasons above stated but for the additional reasons stated in my former dissenting opinion read some time ago in open court.

I think the case of *Kelly* v. *Jersey City Co.,* 74 N. J. L. 734, 67 Atl. 108, is clearly against the contention of the majority. They try to explain it away by saying that in that case the plaintiff protested to the bookkeeper who had charge of the pay-roll, while in this case the plaintiff protested to the president, the logic of which I am too obtuse to appreciate and which to my mind is a distinction without a difference. I would affirm the judgment below.