THE LAFOUNTAIN & WOOLSON CO. *v.* WALTER H. BROWN.

February Term, 1917.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed June 23, 1917.

*Contracts—Sale of Corporate Stock—Statute of Frauds—Delivery and Payment—Dividends.*

An oral agreement between plaintiff and defendant that plaintiff would give a certain price asked by defendant for the latter's stock in a certain corporation, and would pay for it the next day is not an option, but an unconditional agreement for the sale and purchase of the stock.

In an oral contract for the sale of corporate stock, the delivery of the stock and payment for it take the transaction out of the Statute of Frauds, and leave the rights of the parties to be determined independently of it.

If, after a valid contract for the sale of shares of corporate stock is made, but before the time for delivery and payment arrives, a dividend is declared upon the stock, the purchaser is entitled to the dividend on complying with the contract.

CONTRACT, for money had and received. Plea, the general issue. Trial by court at the June Term, 1916, Windsor County, *Slack*, J., presiding. Judgment for the plaintiff. Defendant excepted. The opinion states the case.

*Blanchard & Tupper* for the defendant.

*Stickney, Sargent & Skeels* for the plaintiff.

TAYLOR, J.    The action is contract for money had and received.    The plaintiff seeks to recover the amount of a dividend on stock purchased by it from the defendant.    The case was tried by the court on an agreed statement of facts and the plaintiff had judgment.

The defendant was the owner of the major part of the capital stock of the Brown Hotel Company, a corporation operating a hotel at Springfield, Vt., and one of the three directors of the corporation.    On March 24, 1916, he had negotiations with plaintiff's representative regarding the sale of the capital stock of the Hotel Company.    Later the same day the defendant's agent called plaintiff's representative by telephone and told him that the defendant would sell his stock to the plaintiff at a certain price per share.    Plaintiff's representative replied that the plaintiff would take the stock at the price named and pay for it the following morning, to which defendant's agent assented.    No part of the stock was then delivered nor any part of the purchase money paid; neither was any written memorandum of the bargain made.    On the following morning the defendant and plaintiff's representative met and the transaction was completed by delivery of the certificate of stock and payment of the purchase price.    During the negotiations nothing was said about cash in the treasury of the hotel company.

On March 24, 1916, after the above telephone conversation, the defendant called a meeting of the directors of the Hotel Company, and a dividend of $1.50 per share was declared, which was immediately paid by the treasurer of the corporation.    The defendant received as the dividend on the stock bargained to the plaintiff $499.50.    The plaintiff first learned of the dividend when the books of the Hotel Company were turned over after the delivery of the stock.    Thereupon it made demand upon the defendant; and payment being refused, this suit was brought.

To maintain this action the plaintiff must establish that it was entitled to the dividend as the purchaser of the defendant's stock; and its right to receive the dividend depends upon its relation to the stock at the time the dividend was declared.    It is held that in case of options and sales of stock for future de-

livery the right to dividends depends upon the question at what time with reference to the declaration of the dividend the title passes. 7 R. C. L. 293. This transaction was not an option. It culminated in an unconditional agreement for the sale and purchase of the stock before the dividend was declared. All that remained to be done was the delivery of the certificate and the payment therefor at the time fixed in the agreement.

The defendant contends that the agreement of March 24 was invalid because within the statute of frauds, so that no rights could accrue under it. Conceding that while the agreement remained wholly executory it was not enforceable because of the statute, the subsequent delivery and payment took the transaction out of the statute, leaving the rights of the parties to be determined independently of it. *Patterson* v. *Sargent,* 83 Vt. 516, 77 Atl. 338, 138 Am. St. Rep. 1102; *Strong* v. *Dodds,* 47 Vt. 348; *Fay* v. *Wheeler,* 44 Vt. 292; 2 Cook on Cor. 1045.

The defendant claims further that title to the stock did not pass until payment and delivery; and so as the stock belonged to him at the time the dividend was declared, the dividend was payable to him. There is no disagreement as to the general rule that a dividend belongs to the one who was the owner of the stock when the dividend was actually declared. See *King* v. *Follett,* 3 Vt. 385. It is also well settled that the surplus of a corporation is a part of the stock itself until separated from the capital by the declaration of a dividend. See *In re Heaton's Estate,* 89 Vt. 550, 96 Atl. 21, L. R. A. 1916 D 201. Such undivided surplus will pass with the stock under that name in a transfer thereof. The purchaser takes the stock with all its incidents, one of which is the right to receive its proportionate share of undivided profits. *Harris* v. *Stevens,* 7 N. H. 454; *March* v. *Eastern Railroad Co.,* 43 N. H. 520; 7 R. C. L. 292; 10 Cyc. 556.

The defendant recognizes this fact and bases his right to the dividend upon the claim of legal title to the stock at the time it was declared. But the question does not depend alone upon legal title. The principle of equitable assignments applies. The purchaser of shares of corporate stock is held to acquire an equitable interest in the stock before the transfer is completed, if the agreement of purchase and sale is binding between the parties. As between them such interest will be enforced and protected as a trust. 1 Morawitz on Pr. Cor. § 174.

In construing an agreement for the sale of shares of stock it will be taken to be the intention of the parties, nothing to the contrary appearing, that the shares are to be transferred in their conditions at the time of the bargain. 1 Morawitz on Pr. Cor. § 175. Thus the law imputes to the seller an intention to deal fairly with the purchaser, and in doing so requires him to deliver only what entered into the value and price at which the stock was sold. While it permits him to retain the "fallen fruit," it does not accord to him the additional privilege of "shaking the tree" after the bargain is closed.

It follows from what we have said that if, after a valid contract for the sale of shares of stock is made but before the time for delivery and payment arrives, a dividend is declared, the purchaser is entitled to the dividend on complying with the contract. *Phinizy* v. *Murray*, 83 Ga. 747, 10 S. E. 358, 6 L. R. A. 426, 20 Am. St. Rep. 342; *Currie* v. *White*, 45 N. Y. 822; *Harris* v. *Stevens*, 7 N. H. 454; *Conant* v. *Reed*, 1 Ohio St. 298; *Beach* v. *Hamersham*, L. R. 4 Ex. D. 24; 7 R. C. L. 293; 2 Addison on Con. § 661; Cook on Stocks & Stockholders, § 543; 2 Cook on Cor., § 539; 1 Morawitz on Pr. Cor., §§ 174-178.

The result is that under the agreement in this case the dividend belongs to the plaintiff.

                                        *Judgment affirmed.*