2010 VT 30

## In re Shelburne Supermarket, Inc.
### (Harry Clayton and Lucille Clayton, Appellants)

[996 A.2d 230]

No. 09-181

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed April 9, 2010

*Carole C. Obuchowski* of *Joseph F. Obuchowski & Associates*, Burlington, for Appellants.

*Thomas F. Heilmann* of *Heilmann, Ekman & Associates, Inc.*, Burlington, for Appellee.

¶ 1. **Reiber, C.J.** Parents Harry Clayton and Lucille Clayton appeal from the trial court's order in this long-running family dispute over stock shares. An arbitrator concluded in 2002 that son Steven Clayton, rather than parents, owned certain disputed shares. The trial court confirmed this decision on appeal. Following additional proceedings, the trial court also concluded that son was entitled to $514,964.26 in past dividends paid on these shares. Parents argue that the court erred in awarding son this sum. We affirm.

¶ 2. This case has a long and convoluted procedural history, which we must recount in some detail given the nature of the arguments raised on appeal. The record indicates the following. Shelburne Supermarket is a closely-held family corporation in which parents, son, son's siblings, and one other individual hold stock. In the spring of 1979, parents proposed that Steven take over the majority ownership of the store and run the business so

that they could retire. Steven agreed and he was provided a bill of sale in which parents purported to sell him 25.5 of their shares for a certain sum, apparently to be paid over time. Steven took over operations, and the business thrived under his management.

¶ 3. In 1987, Steven filed for divorce. In an effort to avoid any claim by Steven's wife to a share of the corporation, father "cancelled" the 1979 sales agreement with Steven, and he had Steven sign a bill of sale selling twelve shares of stock to parents. Father told Steven that he would return the shares to him. The trial court deemed this a fraudulent conveyance in Steven's divorce proceedings, and we upheld the court's decision on appeal. See *Clayton v. Clayton*, 153 Vt. 138, 142, 569 A.2d 1077, 1079 (1989) (holding that trial court properly disregarded an agreement that would have conveyed marital assets in contemplation of divorce in return for little or no consideration).

¶ 4. In 1989, Steven asked father to return his shares, but father refused. The parties' dispute over the ownership of these shares led to difficulties in corporate governance and management. Counsel for the corporation encouraged the parties to engage in arbitration, and in 2002 the parties contacted an arbitrator and agreed in writing to arbitrate their dispute. The trial court later found that, although the arbitration agreement did not specifically articulate the "dispute" to be arbitrated, it was clear that the parties had agreed to arbitrate son's claim that parents should reconvey the disputed shares of stock.

¶ 5. The arbitrator issued his decision in August 2002. He concluded that father's "cancellation" of the parties' 1979 agreement and Steven's subsequent return of certain shares was a nullity and wholly without legal effect. Thus, he found that Steven was the rightful owner of his original 2.4 shares as well as the 25.5 shares he purchased from parents, which represented a 55.8% ownership of the corporation. In reaching his conclusion, the arbitrator rejected parents' attempt to raise a statute-of-limitations defense. He found that all parties had agreed in connection with arbitration that the statute of limitations would not be a bar to the resolution of their dispute.

¶ 6. Parents appealed this decision to the trial court. They asked the court to modify the arbitrator's decision (1) to eliminate the reference to their statute-of-limitations defense, other than to state that the statute of limitations defense was reserved and was not part of the arbitration; and (2) to clarify that, if parents'

statute-of-limitations defense was ultimately determined to be without merit, then Steven must fully comply with the terms of the first agreement and pay parents the $55,770.28 still due for their shares of stock. Steven objected to parents' request. He argued, in relevant part, that the question of any payment owed to parents was not raised by either party at the time of the arbitration, and that, if it had been, he would have responded with affirmative defenses and a counterclaim for amounts and benefits received by parents equal to or greater than parents' claim.

¶ 7. In September 2003, the court confirmed the arbitrator's award. It rejected parents' statute-of-limitations argument, finding that parents' counsel had withdrawn the issue from consideration during arbitration. Following the court's decision, both parties requested amended findings setting forth the financial obligations of the parties relative to the stock ownership. The court denied the request in October 2003, finding that the arbitrator had not addressed this issue and it must infer that no significant evidence regarding this issue had been presented during arbitration. The court rejected parents' assertion that, because Steven suggested in a filing with the arbitrator that he would be willing to "complete the purchase," he was by implication not counterclaiming for the amount paid out as dividends, and that he was therefore barred from doing so now under the doctrine of res judicata.

¶ 8. As the court explained, the preclusive effect of an arbitration award depended on the arbitration contract. The agreement here provided no basis for broadly defining the parties' dispute to include, and thereby preclude, the dividend claim. Moreover, the court continued, the alleged basis for preclusion — Steven's attorney's mention of willingness to complete the transaction — was anything but an explicit waiver of the dividend matter. Finally, the court noted that the arbitration was set in motion, not by parents and son, but by an attorney on behalf of the corporation. That attorney saw that the corporation could not engage in effective governance when the dispute over share ownership prevented any meaningful meetings or votes. It was this question of share ownership that drove the parties to arbitration, it is what they thought they were arbitrating, and it was the issue on which they presented evidence and argument. The court thus did not consider it fair to decide the financial issues on the present record.

¶ 9. Subsequent to this order, in December 2003, the court granted son's request for final judgment under V.R.C.P. 54(b),

confirming the arbitrator's award.[1] The court reiterated that the remaining issues in the case, as referenced and determined in the court's October 2003 ruling, were separate and distinct from the issues resolved by the court's September 2003 ruling regarding the arbitration award and that they would be resolved, if necessary, in subsequent proceedings before the court.

¶ 10. In April 2004, son provided a statement of claim, explaining his position concerning the remaining issues in the case. Son sought an accounting pursuant to 12 V.S.A. § 4251; he also alleged breach of the 1979 agreement, conversion, unjust enrichment, and other claims. Son sought judgment against parents in the amount equal to all dividend distributions received by parents between 1987 and 2002, and he asserted that any amounts that he owed parents should be offset against the sums parents owed to him.

¶ 11. Parents then moved to dismiss son's claim under Vermont Rule of Civil Procedure 12(b)(6) on res judicata grounds. Parents asserted that, under the doctrine of res judicata, son's present claims for dividends were improper because they would split his indivisible cause of action, namely his assertion of ownership. They argued that son should have presented his claim for past dividends at the arbitration and that, by failing to do so, he was now barred from raising this claim. Alternatively, parents asserted that son's claims were barred by the statute of limitations, or at the least, son's claim for dividends should be limited to the six-year period between 1998 and 2004. In a June 2004 order, the court rejected parents' res judicata argument. The court agreed with parents, however, that due to the statute of limitations, Steven could seek only those dividends paid out in the six years prior to the present litigation.

¶ 12. Parents later filed an answer to son's claim, raising numerous affirmative defenses. Parents also raised a counterclaim, alleging that Steven breached the 1979 agreement. They maintained that, due to Steven's breach, they were entitled to rescission of the agreement and a declaration that they were the rightful owners of the disputed stock shares. Alternatively, parents sought an award of damages.

¶ 13. The parties subsequently filed cross-motions for summary judgment, which the court addressed in January 2007. Based on

---

[1] Parents filed a notice of appeal, but the appeal was dismissed by this Court in March 2004.

the arbitrator's finding that son owned the disputed shares, the court reasoned that in 1987 son effectively became pledgor of the stock and parents became pledgees. As relevant to this case, that meant that parents did not have the right to dividends, without using such payments to reduce son's debt for the purchase of the shares. Once the purchase price debt was paid, the pledge purpose was satisfied and no reason existed for its continuation. The amount of dividends paid to parents for the six years prior to the filing of son's present claim appeared undisputed, although the amount of the original purchase price owed to parents was disputed. The court thus left open the question of the amount owed to parents, though it attempted to show how the 1987 debt would translate into a current obligation based upon the apparently undisputed dividend payments.

¶ 14. In October 2007, son filed a supplemental motion for summary judgment regarding his entitlement to stock dividends and damages. Parents then sought to amend their pleadings to add equitable defenses, including quantum meruit and unjust enrichment. Parents asserted that they earned some or all of the dividend distributions because they came out of retirement between 1988 and 1993 to save the corporation from going out of business. Son opposed parents' motion.

¶ 15. In a February 2009 order, the court denied parents' request, finding it untimely. It explained that, even assuming as parents asserted, that they had come out of retirement and assumed management of the corporation, parents had paid themselves dividends, reported the transactions as dividends, and had them treated that way for tax purposes. Parents had also admitted that the dividends they received more than equaled any remaining purchase price debt of Steven. The court found that it was too late in the proceedings to raise a more-than-fifteen-year-old claim that these payments were not really dividends at all. For this and other reasons, the court found parents' earlier admission should stand. The court granted son's motion for summary judgment and stated that it expected to enter judgment upon presentation of a form of judgment separately setting out principal and interest.

¶ 16. Parents then filed a motion for reconsideration, arguing for the first time that the court lacked subject matter jurisdiction over the case. The court rejected parents' assertion in a written order and denied the motion. Final judgment was entered in favor of son in April 2009, and this appeal by parents followed.

¶ 17. On appeal, parents reiterate their argument, rejected by the trial court, that son was improperly allowed to "split" his claim. They maintain that son did not argue that he was owed dividend payments during arbitration and the court improperly assumed subject matter jurisdiction over this claim. Parents assert that, unlike son's claim, their claim for payment for the disputed shares was raised before the arbitrator. As they did below, parents point to a statement by son's attorney in an arbitration-related filing that son was "willing and able to complete the purchase." Parents argue, alternatively, that res judicata bars son from raising his claim for dividend payments.

■ ¶ 18. These arguments are without merit. As the trial court found, son was not "splitting his claim" because the issue of dividend payments was not within the scope of the agreed-upon arbitration. Contrary to parents' suggestion, the court did not decide this issue as part of parents' challenge to the arbitration award. Cf. 12 V.S.A. § 5671 (describing superior court's jurisdiction relevant to its review of arbitration awards). Instead, following the court's confirmation of the arbitration award, son filed a statement of claim, to which parents filed an answer and a counterclaim. The court plainly had subject matter jurisdiction over this dispute. See 4 V.S.A. § 113 (superior court has original and exclusive jurisdiction of all original civil actions, with exceptions not relevant here); see also Vt. Const. ch. II, § 31 ("The courts of this state may exercise equity jurisdiction as well as law jurisdiction in civil proceedings as may be provided by law or by judicial rules not inconsistent with law.").

■ ¶ 19. Parents' assertion that son's claim is barred by the doctrine of res judicata is equally without merit. Res judicata, or claim preclusion, "bars litigation of claims or causes of action which were or might properly have been litigated in a previous action." *Agway, Inc. v. Gray*, 167 Vt. 313, 316, 706 A.2d 440, 442 (1997) (quotation omitted). As we have recognized, "[t]he core inquiry . . . is whether there was a full and fair opportunity to litigate the matter in the earlier action." *Id.* (quotation omitted). This is because the doctrine of res judicata "is based upon requirements of justice and public policy which reflect the consideration that there be an end to litigation after each party has had a full and fair opportunity to present all pertinent facts." *Id.* (quotation omitted).

■ ¶ 20. The requirements of res judicata are plainly not satisfied here. It is true that "an arbitration is in the nature of a judicial inquiry, and thus has the same force and effect of an adjudication in terms of precluding the same parties from relitigating the same subject." *Id.* Unlike a judicial proceeding, however, the scope of an arbitration is a creature of contract. Thus, as the trial court stated, the parties are free to arbitrate some parts of their dispute while setting other matters aside, regardless of the legal implications that would attach if the issue had been litigated rather than arbitrated. See, e.g., *Lee L. Saad Constr. Co. v. DPF Architects, P.C.*, 851 So. 2d 507, 517 (Ala. 2002) (explaining that when deciding whether an arbitrator's award is res judicata as to a subsequent award, court must consider whether the claim was within the scope of the submission to the arbitrator; see also Restatement (Second) of Judgments § 84 cmt. d (1982) ("A preliminary question in giving res judicata effect to an arbitration award is whether the claim or issue was within the scope of the reference to arbitration.").

■ ■ ¶ 21. In this case, the parties did not agree to arbitrate the issue of payment for the shares and recovery of dividends. As the trial court explained and the record shows, no party to the arbitration either raised the issue of restitution or presented evidence regarding this issue — the only shared goal between the parties at the time of the arbitration was resolving the corporate governance issue. We agree with the trial court that the only plausible conclusion is that there was never any expectation or agreement to place a restitution claim for return of past dividends on the arbitration table. In fact, as the trial court found, the arbitration agreement implicitly excluded such an issue, which would have involved hundreds of thousands of dollars, so that the pressing issue of the time — the question of ownership — could be resolved. "Because an arbitrator's jurisdiction is limited to the scope of the submission, claims not within the scope of the submission are not barred by the doctrine of res judicata in a subsequent action." *Lee L. Saad Constr. Co.*, 851 So. 2d at 517. Son had no "full and fair opportunity" to litigate this claim during arbitration, and parents' res judicata argument is without merit.

■ ¶ 22. Parents' assertion that son should be barred by the statute of limitations from recovering any dividends prior to the 2002 arbitrator's award is equally without merit. Parents offer no

compelling reason why the statute of limitations would bar son from recovering any dividends at all. Son did not assert for the first time in 2004 that he owned the shares, as parents appear to suggest. Son's ownership interest was previously determined by the arbitrator and confirmed by the trial court in 2003. Parents did not successfully appeal this determination, and thus, that decision is final. We similarly reject parents' belated challenge to the arbitrator's finding that the 1987 stock transfer was a nullity.

¶ 23. Parents next argue that son erred in raising a claim under the accounting statute, 12 V.S.A. § 4251, because that statute does not apply here. The court did not rest its decision on this statute, however. Son argued in his motion for summary judgment that he was entitled to the dividends because, as the arbitrator found, he was the rightful owner of the disputed stock shares. See *LaFountain & Woolson Co. v. Brown*, 91 Vt. 340, 342, 101 A. 36, 37 (1917) (recognizing general rule that "a dividend belongs to the one who was the owner of the stock when the dividend was actually declared"). The trial court agreed, finding that parents were pledgees of son's stock shares, and that son was entitled to restitution. Parents' claim of error, premised on 12 V.S.A. § 4251, is irrelevant to the court's analysis.

¶ 24. Parents next argue that the court erred by allowing an equitable accounting but then refusing to accept their evidence of countervailing equitable considerations and entitlements relative to such dividends. As set forth above, the court denied parents' Rule 81(d) motion as untimely; it also found that parents had admitted that the payments were dividends and not payment for services and that they should be held to their admission. We do not reiterate all of the court's findings in this regard here. The court acted well within its discretion in denying parents' belated motion to amend. See Reporter's Notes, V.R.C.P. 81(d) (stating that Rule 81(d) gives courts limited discretion to improvise procedures in unforeseen situations that the rules do not cover, and rule is not intended as a general power to enlarge the rules); V.R.C.P. 15(a) (once responsive pleading has been filed, party may amend his or her pleading only by leave of court or by written consent of adverse party); *Lillicrap v. Martin*, 156 Vt. 165, 170, 591 A.2d 41, 44 (1989) ("Whether an amendment should be permitted is an issue addressed to the sound discretion of the trial court. We will reverse the action of the trial court on such rulings only where there is an abuse of discretion.").

¶ 25. In light of our conclusions above, we reject parents' final assertion that the court acted contrary to the policies underlying the Arbitration Act by deciding the dividends and payments issues. As the trial court explained, and the record shows, the proceedings confirming the arbitration award were concluded prior to consideration of the later-pled issues, and the expeditious handling of parents' appeal of the arbitration award was not compromised by addressing ancillary issues in such a manner as to protect the parties' procedural rights.[2]

*Affirmed.*

---

[2] In reaching our conclusion, we have not considered any additional legal arguments offered by Steven in his December 17, 2009 filing with the Court. We therefore deny as moot parents' motion to strike certain language from this filing.