## 2010 VT 84

## Harry Clayton and Lucille Clayton v. Stephen A. Unsworth, Esq., Unsworth, Powell, Barra, Orr and Bredice, PLC and Its Successor Entity, Unsworth and Barra, PLC

[8 A.3d 1066]

No. 09-334

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 26, 2010

*Carole C. Obuchowski* of *Joseph F. Obuchowski & Associates,* Burlington, for Plaintiffs-Appellants.

*James E. Preston* of *Pierson Wadhams Quinn Yates & Coffrin, LLP,* Burlington, for Defendants-Appellees.

¶ 1. **Burgess, J.** Harry and Lucille Clayton appeal from the trial court's order granting summary judgment to defendants on their legal malpractice claim and dismissing their remaining claims. The Claytons argue that summary judgment was improperly granted, focusing on attorney Stephen Unsworth's alleged "waiver" of a statute-of-limitations defense in an arbitration proceeding. We affirm.

¶ 2. The Claytons have been involved in a long-running dispute with their son Steven Clayton over the ownership of stock shares in Shelburne Supermarket, Inc., a closely held family corporation. As recounted in a related case, *In re Shelburne Supermarket, Inc.,* 2010 VT 30, 187 Vt. 514, 996 A.2d 230, the Claytons sold 25.5 stock shares to Steven in 1979, giving him a majority of the corporation's stock. No stock was apparently issued, but the Claytons provided Steven with a bill of sale and Steven agreed to abide by certain conditions. Steven also agreed to assume parents' financial obligation to several other individuals.

¶ 3. In 1987, Steven filed for divorce and in an effort to keep Steven's wife from acquiring any stock, Mr. Clayton purported to cancel the 1979 agreement. Mr. Clayton wrote "agreement cancelled" on the document, and indicated that Steven violated a provision requiring that the stock conveyed to Steven "shall always be considered" Steven's personal property and not joint property in the event that Steven married. On the same date, Steven resigned as director and officer of the corporation and gave Lucille Clayton the right to vote his shares. Steven also signed a bill of sale for twelve shares of stock to his parents. Mr. Clayton informed Steven that he would return the shares following the divorce. The trial court disregarded the Claytons' 1987 machinations in Steven's divorce proceedings, essentially finding them fraudulent. We affirmed the trial court's decision on appeal. *Clayton v. Clayton,* 153 Vt. 138, 142, 569 A.2d 1077, 1079 (1989).

¶ 4. Following the divorce, Mr. Clayton refused to return the shares to Steven. The parties' ongoing dispute over stock ownership created difficulties in corporate governance, and at the urging of counsel for the corporation, the parties engaged in binding arbitration in 2002. Unsworth represented the Claytons in this process. In a written decision, an arbitrator found that all of the actions taken in 1987, including Mr. Clayton's cancellation of the 1979 agreement and Steven's bill of sale for twelve shares, were a charade intended solely to thwart Steven's wife from claiming an interest in the corporation. The arbitrator thus found the July 1987 documents and the transfers they purported to effect to be a nullity, devoid of any legal effect or legal basis.

¶ 5. In his decision, the arbitrator rejected the Claytons' assertion that, given the six-year statute of limitation, 12 V.S.A. § 511, the passage of twenty-three and fifteen years, respectively, since the original sale and the July 1987 transactions precluded the arbitrator from granting any relief. The arbitrator explained that the statute of limitations typically began to run when a cause of action arose and the duration depended upon what kind of cause of action was asserted. This dispute involved a closely held family corporation that did not always comply with legal formalities and did not always issue stock certificates. The parties had turned to arbitration to allow the shareholders to vote in a meaningful fashion — there was no expressed wish to assert any particular cause of action.

¶ 6. The arbitrator found the expressed agreement of the parties to the arbitration proceeding even more significant. He explained that the corporation, with the approval of the shareholders, decided to employ alternative dispute resolution (ADR) to end the various corporate uncertainties regarding stock ownership and control. The arbitration proceeding was the chosen method, and there was no statute-of-limitations issue to apply to the arbitration proceeding. He noted, moreover, that all parties had agreed at their shareholders' meeting, prior to engaging in ADR, that the statute of limitations would not be a bar to the resolution of the dispute.

¶ 7. Ultimately, then, the arbitrator concluded that the Claytons' attempt to eliminate the March 1979 agreement and sale of stock had no legal effect, and that there was no breach of those agreements by Steven. Steven owned 27.9 shares of the total issued common stock, which was a 55.8% interest in the company.

The Claytons moved to vacate or modify this decision, but their motion was denied by the superior court in 2003.[1] The Claytons' appeal to this Court was dismissed, rendering the superior court's decision final.

¶ 8. The superior court later heard a civil case regarding past dividend payments, with Steven stating specific claims against parents and parents filing an answer and counterclaims. The Claytons did raise a statute-of-limitations defense in this proceeding, and the payment of dividends was limited to the six-year period preceding the litigation at issue. The superior court found that the Claytons owed Steven over $500,000 in dividends paid on the wrongfully withheld shares. We affirmed the superior court's decision on appeal. *In re Shelburne Supermarket*, 2010 VT 30.

¶ 9. In May 2008, while the dividend action was pending, the Claytons sued Unsworth, his law firm at the time of the arbitration, and the law firm's successor entity. As relevant here, the Claytons alleged that Unsworth committed legal malpractice by, among other acts and omissions, waiving the statute-of-limitations defense during the 2002 arbitration proceeding. The Claytons argued that the statute of limitations was "an absolute defense" against any claims by Steven to the return of the shares and his claim for outstanding dividends, and that Steven's claim could never have been brought, in court or otherwise, absent Unsworth's waiver. The Claytons maintained that they suffered damages as a result of Unsworth's negligent waiver, including the loss of their dividend income and health insurance, the loss of the value of the stock, and attorney's fees.

¶ 10. Defendants moved for summary judgment in September 2008, arguing that the Claytons could not establish proximate cause because, even if Unsworth had "preserved" a statute-of-limitations defense in the arbitration proceedings, it would not have changed the result because the statute of limitations provided no defense to a fraudulent contract that was void ab initio. The Claytons opposed the motion, reiterating their position that

---

[1] In their motion to modify or vacate the arbitration award, the Claytons asked the court to strike the arbitrator's discussion of the statute-of-limitations issue, and to add a statement that the statute-of-limitations defense was reserved and not part of the arbitration. The superior court denied the motion, and rejected the Claytons' assertion that their attorney had preserved the statute-of-limitations issue for later determination both as a matter of fact and as an unreasonable inference as a matter of law.

the statute of limitations was an "absolute defense," among other arguments. Regardless of the merit of the Claytons' legal argument in response to defendants' position, the Claytons did not include any affidavits to support their version of the facts. The Claytons relied on general conclusory statements such as "but for Unsworth's representation," they would have had no liability to Steven. Additionally, while the Claytons stated generally that they believed they were participating in mediation and that they were unaware that they "had been irrevocably committed to a binding arbitration," they provided no details and no sworn statement to this effect.

¶ 11. Following additional filings by both parties, the court granted summary judgment to defendants in a May 2009 order. The court agreed with defendants that the legal malpractice claim failed as a matter of law because Unsworth's alleged malpractice was not the proximate cause of the Claytons' damages. Under the doctrine of collateral estoppel, the court explained, the Claytons were bound by the arbitrator's 2002 finding that Mr. Clayton's attempt to cancel the 1979 agreement was a legal nullity, i.e., it was deemed never to have occurred. Thus, the court reasoned, any statute-of-limitations defense would have been unavailing and the Claytons suffered no harm from counsel's actions.

¶ 12. The court also rejected the Claytons' remaining negligence claims, finding that the Claytons failed to submit any affidavits or other admissible record evidence to support them. These included claims that Unsworth failed to meet the standard of reasonable care, skill, and diligence expected of an attorney because he: (1) failed to demonstrate a sufficient understanding of the difference between a mediation and an arbitration; (2) did not demonstrate a sufficient understanding that he could not stop an arbitration proceeding after the hearing; (3) failed to sufficiently prepare for the arbitration, and specifically, to prepare for a binding arbitration instead of a nonbinding mediation; (4) failed to sufficiently research the questions of law and fact required for the arbitration; (5) failed to prepare the Claytons for an arbitration; (6) failed to appreciate that the other parties, through their writings, were preparing for an arbitration as opposed to a mediation; and (7) advised the Claytons to sign the arbitration agreement without informing them fully of the consequences of signing such a document, and without understanding fully himself those consequences.

¶ 13. The court noted that not only did the Claytons fail to submit affidavits, but also their complaint was neither verified nor based on actual, personal knowledge. See *Pierce v. Riggs*, 149 Vt. 136, 138-39, 540 A.2d 655, 657 (1987) (noting that a sworn pleading is the equivalent of an affidavit for the purposes of a motion for summary judgment). Additionally, the Claytons made conclusory factual allegations that were unsubstantiated in the record, and these allegations could not serve to defend against a motion for summary judgment. They also failed to submit an expert affidavit to support their claims that any of Unsworth's specified conduct constituted a deviation from the existing standard of care for a Vermont attorney. Without such testimony, the court found that the Claytons could not establish a prima facie case of negligence. The court thus granted summary judgment to defendants and dismissed the Claytons' remaining negligence claims. The Claytons filed a motion to alter and amend, which the court denied. This appeal followed.

¶ 14. As an initial matter, we reject the Claytons' attempts to collaterally attack the arbitrator's 2002 decision. The Claytons assert, for example, that the arbitrator acted outside the scope of his authority and that he committed legal error in finding the 1987 transaction "void ab initio" rather than merely "voidable." Such arguments might have been raised in 2002, but they have no relevance here.[2] The arbitrator's decision is long-since final and binding on the Claytons, and we do not address these belated challenges to the merits of the arbitrator's decision.

¶ 15. We thus turn to the heart of the appeal — whether the trial court erred in granting summary judgment to defendants. We review the trial court's decision de novo, using the same standard as the trial court. *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 309, 683 A.2d 386, 388 (1996). Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the [statement of material facts], show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3).

¶ 16. Because they did not bear the burden of persuasion at trial, defendants could satisfy their "burden of production by

---

[2] We note, moreover, that the grounds on which an arbitration decision can be modified or vacated are very limited. 12 V.S.A. § 5677.

showing the court that there is an absence of evidence in the record to support the nonmoving party's case. The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact." *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 18, 665 A.2d 580, 583 (1995) (citation omitted). While the nonmoving party is entitled to all reasonable doubts and inferences, he or she may not "rest on allegations in the pleadings to rebut credible documentary evidence or affidavits." *Gore v. Green Mountain Lakes, Inc.*, 140 Vt. 262, 266, 438 A.2d 373, 375 (1981). Instead, the nonmoving party "must come forward with an opposing affidavit or other evidence that raises a dispute as to the fact or facts in issue." *Alpstetten Ass'n v. Kelly*, 137 Vt. 508, 514, 408 A.2d 644, 647 (1979); see V.R.C.P. 56(e).

¶ 17. To support their malpractice claim, the Claytons needed to prove that Unsworth "was in fact negligent and that this negligence was the proximate cause" of their injuries. *Estate of Fleming v. Nicholson*, 168 Vt. 495, 497, 724 A.2d 1026, 1028 (1998). Because this was a professional negligence case, expert testimony was required to: establish the standard of care; show that defendants' conduct departed from that standard; and show that the conduct was the proximate cause of the Claytons' harm. *Id.* The only exception to this requirement is where the "lack of care is so apparent that only common knowledge and experience are needed to comprehend it." *Id.* at 497-98, 724 A.2d at 1028.

¶ 18. The core of the Claytons' arguments is that, but for Unsworth's alleged negligent waiver of their statute-of-limitations defense, Steven had no legal or equitable cause of action to assert against them in 2002. Under this scenario, the arbitration proceeding would not have gone forward, they would still own the disputed stock, Steven would not have cancelled their health insurance, and they would not owe Steven past dividends.

¶ 19. These arguments rest on a faulty premise. While the running of the statute-of-limitations period might have been an "absolute defense" to an articulated legal claim in a civil proceeding and the failure to raise the defense could possibly be considered "per se negligence" as the Claytons assert, the arbitration was not, and did not arise from, a civil proceeding, and Steven raised no legal claim against the Claytons. Arbitration is an alternative to litigation that is designed to promote "the efficient resolution of disputes." *Springfield Teachers Ass'n v.*

*Springfield Sch. Dirs.*, 167 Vt. 180, 183, 705 A.2d 541, 543 (1997); see also *R.E. Bean Constr. Co. v. Middlebury Assocs.*, 139 Vt. 200, 204, 428 A.2d 306, 309 (1980) ("[T]he Court is mindful of the importance of arbitration as an alternative to the courts for the speedy and relatively inexpensive resolution of disputes and of arbitration's long history in Vermont law."). As one court has explained:

> An arbitration proceeding is not had in a court of justice. It is not founded on the filing of a claim or complaint as they are generally understood. The very purpose of arbitration is to *avoid* the courts insofar as the resolution of the dispute is concerned. It is a substitute forum designed to reach *settlement* of controversies, by extrajudicial means, *before* they reach the stage of an *action* in court.

*Thorgaard Plumbing & Heating Co. v. County of King*, 426 P.2d 828, 833 (Wash. 1967) (citation and footnote omitted). Unlike the initiation of a civil suit, parties who participate in private arbitration must *agree* to arbitrate, and it is their agreement that provides the source of the arbitrator's authority. See *In re Robinson/Keir P'ship*, 154 Vt. 50, 55, 573 A.2d 1188, 1190 (1990) ("The agreement to arbitrate is a contract, and 'an arbitrator's authority finds its source in contract.'" (citation omitted)).

■ ¶ 20. The rules of evidence and the rules of civil procedure do not, by their plain language alone, extend to arbitration proceedings. See V.R.E. 101 (rules of evidence "govern proceedings in the courts of this State"); V.R.C.P. 1 (rules of civil procedure "govern the procedure in the District Court and in the superior courts in all suits of a civil nature"); see also Uniform Arbitration Act § 15 (2000) (rules of evidence are inapplicable in arbitration proceeding, with exception not relevant here); *Springfield Teachers Ass'n*, 167 Vt. at 184, 705 A.2d at 544 (Vermont Arbitration Act is based on Uniform Arbitration Act). Similarly, absent any agreement to the contrary, the relevant statute of limitations, by its plain terms, does not apply. See, e.g., 12 V.S.A. § 511 (with exceptions not relevant here, "[a] *civil action* . . . shall be commenced within six years after the cause of action accrues and not thereafter" (emphasis added)); see also *Broom v. Morgan Stanley DW Inc.*, No. 60115-6-I, 2008 WL 4053440, at *4 (Wash. Ct. App. Sept. 2, 2008) (concluding that

statutes of limitation, by their terms, did not bar claims in arbitration proceedings, and agreeing that arbitrator committed error of law in dismissing proceeding on statute-of-limitations grounds); *City of Auburn v. King County*, 788 P.2d 534, 536 (Wash. 1990) (upholding trial court's conclusion that "the statute of limitations by its language does not apply to arbitration"). The Claytons cite no authority to the contrary.

¶ 21. As one court has explained:

> The possibility that arbitrators may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action is simply a risk that the parties, by voluntarily submitting to arbitration, have agreed to bear in exchange for a quick, inexpensive, and conclusive resolution to their dispute. The parties may avoid this risk, if they wish, by specifically agreeing that the arbitrators must act in conformity with rules of law.

*Wagner Constr. Co. v. Pacific Mech. Corp.*, 157 P.3d 1029, 1033-34 (Cal. 2007) (quotations and ellipses omitted); see also *Morse v. Bishop*, 55 Vt. 231, 234-35 (1882) (recognizing that arbitration is "in the interest of peace, and the State has an interest that controversy should end," and noting that while arbitrators "sometimes get aside of technical law," they "ordinarily reach substantial justice").

¶ 22. Certainly, parties are free to agree to arbitrate all kinds of disputes, including old ones. In fact, the Vermont Arbitration Act specifically provides that an arbitration award cannot be vacated simply because the "relief granted by the arbitrators could not have been granted by a court." 12 V.S.A. § 5677(b). As noted by the arbitrator, it is evident in this case why the shareholders, including the Claytons, agreed to arbitrate this dispute: to restore viable corporate decisionmaking since, regardless of how old the dispute between the Claytons and Steven was, it continued to interfere with the corporation's ongoing business operations.

¶ 23. The arbitrator concluded here that arbitration was agreed upon by the corporation and its shareholders as their chosen method of alternative dispute resolution, and that the statute of

limitations did not apply to that process. This conclusion was entirely consistent with the terms of the arbitration agreement in which the parties stipulated that an action at law was precluded, that the "rules and procedures shall be prescribed by the arbitrator," and that the parties would "comply with any decision rendered." The arbitrator found that the Claytons were aware of the statute-of-limitations issue before the arbitration agreement was signed.

¶ 24. Nonetheless, after the arbitration agreement was signed, Unsworth indicated to the arbitrator in his opening statement that the Claytons believed they had an issue regarding the statute of limitations. Having already signed an arbitration agreement, however, the Claytons were duty-bound to continue with the proceeding, regardless of whether Unsworth "reserved" this issue for later litigation or "waived" it. See 12 V.S.A. § 5652(a) ("[A] written agreement to submit any existing controversy to arbitration . . . creates a duty to arbitrate, and is valid, enforceable and irrevocable, except upon such grounds as exist for the revocation of a contract.").

¶ 25. The Claytons thus erroneously assert that the arbitration "would have never proceeded but for Unsworth's waiver." Refusal to proceed as originally agreed would be subject to an order to compel. *Id.* § 5674(a) ("On application of a party showing an agreement subject to [Vermont Arbitration Act] and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of the agreement, the court shall determine the issue summarily."). The Claytons' statute-of-limitations argument would have been no defense to such an order. See *id.* § 5674(f) ("An order to compel arbitration shall not be refused on the ground that the claim in issue lacks merits or bona fides nor because the applicant has failed to show fault or grounds for the claim sought to be arbitrated.").

¶ 26. The Claytons therefore cannot show that Unsworth's decision to "withdraw" the statute-of-limitations issue at the hearing and to continue with the arbitration, once it had begun, was the proximate cause of any of their injuries. We note that, in any event, the statute of limitations was no bar to the resolution of the parties' dispute via arbitration, and, indeed, the arbitrator specifically found the statute-of-limitations issue unavailing, in part

because there was no articulated legal claim to which it could apply. There was no "per se" negligence during the arbitration hearing, as the Claytons suggest, and they presented no other credible evidence to support this allegation.

¶ 27. The Claytons are thus left with their assertions that Unsworth did not understand the binding nature of arbitration and neglected to advise them of the consequences of agreeing to binding arbitration and related allegations. The Claytons' complaint and their opposition to the motion for summary judgment contained only generalizations, such as the Claytons "didn't know that they had been irrevocably committed to a binding arbitration" and they "were not prepared to argue the legality of the 1987 stock transfer." The Claytons set forth no particular facts concerning Unsworth's representations to them, if any, or their reliance on his representations, if any. They identified no facts to support their claimed expectation only of mediation rather than arbitration. While they stated that they relied on Unsworth's "advice" in signing the arbitration agreement, they identify no such actual advice. Even aside from these deficiencies, the claims must also fail because the Claytons provided no expert testimony, or even their own sworn statement, to support them.[3] Because the Claytons did not establish the essential elements of their claim, summary judgment was appropriately granted to defendants. See *Gallipo v. City of Rutland*, 163 Vt. 83, 86, 656 A.2d 635, 638 (1994) ("Summary judgment [is appropriate] if, after an adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial.").

¶ 28. Finally, we reject the Claytons' assertions that the court granted summary judgment prematurely and that it failed to evaluate the "entire setting of the case." The Claytons misread the requirements of Vermont Rule of Civil Procedure 56. Defendants met their burden of production by arguing that based on the undisputed facts, including the arbitrator's findings, the Claytons' legal malpractice claim failed as a matter of law. Pursuant to Rule 56(c)(3), the Claytons could not then rest upon mere allegations or

---

[3] The Claytons refer to, and have included in their printed case, an affidavit from Mr. Clayton that is dated after the trial court's decision in this case. This affidavit was not included in their motion opposing summary judgment below, and we thus do not consider it in deciding whether the trial court erred in reaching its decision.

denials of defendants' pleading, but rather, they needed to identify specific facts, with citations to the record, showing that there was a genuine issue for trial. While the Claytons argue that they had expert testimony "available," none of it was before the trial court, and they were required by rule to cite any relevant materials in their statement of material facts in order for the court to consider it in ruling on the summary judgment motion. See Reporter's Notes, V.R.C.P. 56, 2003 Amendment (noting that Rule 56 was specifically "amended to make clear that while entitlement to summary judgment is based on a review of the pleadings and other documents in the record, the relevant provisions of those documents *must* be referred to in the statement of material facts required by Rule 56(c)(2) in order for them to be considered by the court in ruling on the motion" (emphasis added)). Facts that are omitted from such statements are not considered by the court. *Id.*

¶ 29. The Claytons provided no citations to the record in their first statement of disputed material facts, and the only material they referred to in their statement of "undisputed material facts" were: allegations in their unverified complaint, the decisions in Steven's divorce case and the superior court's decision confirming the arbitrator's decision. Also included were a 2002 affidavit from Unsworth related to the motion to modify the arbitrator's decision and a copy of the arbitration agreement. None of these materials sufficiently supported their allegations that Unsworth's performance fell below a standard of professional care, or that such negligence was the proximate cause of their damages. Indeed, as previously noted, there was no affidavit in support of their proposition that Unsworth advised them to sign the arbitration agreement or that they had relied on his advice in doing so.

¶ 30. The Claytons' filing in rebuttal to defendants' reply motion was equally deficient. In this filing, they did not identify any disputed material facts. Nonetheless, they included with their filing a portion of the rules of professional conduct, a 2008 affidavit from the Claytons related to the dividend case that contained no assertion relevant to attorney negligence, two legal memoranda from 2002, several pages from Unsworth's deposition, and several other items previously submitted. None of these materials demonstrated that material facts were in issue, or that defendants' motion for summary judgment lacked merit. The Claytons were plainly not entitled to a hearing in which to

present additional evidence, as they suggest. They had ample opportunity to respond to the motion for summary judgment, and to include any evidence they believed necessary to defeat the motion in accordance with Rule 56. Given the Claytons' failure to do so, summary judgment was properly granted to defendants.

*Affirmed.*