*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-205

DECEMBER TERM, 2016

| | | |
|---|---|---|
| Thomas Schildkamp | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Addison Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Feed Commodities International, LLC; | } | DOCKET NO. 222-12-14 Ancv |
| Germain Bourdeau; Remi Bourdeau; James | } | |
| Bushey | } | |

Trial Judge: Samuel Hoar, Jr.

In the above-entitled cause, the Clerk will enter:

Plaintiff Thomas Schildkamp, former employee and shareholder of defendant Feed Commodities International, LCC (FCI), appeals the superior court's decision granting summary judgment to defendants.[*] Plaintiff claims that the parties' decision to hire a mutually agreed-upon valuator who did not have the qualifications required by their shareholder agreement was the product of mutual mistake or, in the alternative, unilateral mistake for which plaintiff is entitled to relief. We affirm.

The summary judgment record reveals the following facts, which are undisputed unless otherwise indicated.

Plaintiff was the chief financial officer of FCI, a feed manufacturing company headquartered in Addison County. In March 2006, the parties entered into a Stockholder and Stock Redemption Agreement, which apportioned fifty shares of the company's stock, just over five percent of the total shares, to plaintiff. The agreement was drafted through negotiations between the parties' respective attorneys. It provided that upon termination, whether voluntary or involuntary, plaintiff would be obligated to sell his shares to FCI. Article VII, section 7.1(c) provided a method for valuing the shares for the purposes of this buy-back:

> (i)   In the absence of agreement as to Fair Market Value, the Fair Market Value of the Shares to be sold shall be determined by an individual who is a <u>certified business valuator</u> (the "Valuator"). The Valuator shall determine the value of the Shares to be sold by performing a valuation of the Corporation (including all its assets). The valuator shall provide either an "opinion of value" or an "estimate of

---

[*]   Plaintiff sued FCI and the principals of the company, who were also parties to the shareholder agreement.

value" of the shares to be sold, the choice of which shall be agreed to by the parties. If the parties do not agree as to the type of valuation to be performed, then the Valuator shall provide a "discussion of value."

(ii)   The parties shall use their best efforts to agree upon the identity of a certified business valuator whose fee shall be paid by the Corporation. In the event the parties are unable to agree on the identity of a Valuator, then each shall retain a Valuator to perform the valuation as set forth hereinbefore, shall individually bear the cost of each such analysis, and the Fair Market Value of the stock to be sold shall be established by the average of the two valuations.

(iii)   The parties agree that the Valuator shall determine the appropriate method of valuation (income vs. market vs. cost) and the appropriateness of applying discounts.

(Emphasis added.)

Plaintiff was terminated in April 2012, triggering his obligation to sell his shares of stock back to the company. In a letter dated June 21, 2012, plaintiff's attorney proposed that FCI "retain the services of CPA Margaret McDonnell who is a certified business valuator." By letter dated June 26, 2012, FCI's attorney responded by rejecting Ms. McDonnell as the proposed business valuator and instead proposing "Ronald N. Geer, ARA of Pietroski & Company of Portland, Maine as the business valuator." The attorney attached Mr. Greer's professional qualifications and suggested that plaintiff could further review Mr. Greer's background by looking at his website, which was cited therein. The letter further stated that if Mr. Greer was not acceptable to plaintiff, plaintiff and FCI should proceed to have the shares valued by their respective valuators.

By letter dated August 13, 2012, plaintiff's attorney informed FCI's attorney that plaintiff agreed "to the appointment of Mr. Greer as the business valuator pursuant to Section 7.1(c)(ii) of the Shareholder Agreement." The letter further indicated that plaintiff agreed "pursuant to Section 7.1(c)(i) to the scope of the task to be undertaken by Mr. Greer, and also agrees that an 'opinion of value' should be provided." Plaintiff's attorney also stated in the letter that both FCI and plaintiff "should have unfettered access to Mr. Greer to ensure he has all the information which the parties believe is relevant to the valuation," noting that "Mr. Greer can determine to what extent such information is or is not, in his opinion, material to the analysis." Plaintiff's attorney expressly sought to avoid "a situation where one party feels aggrieved and, therefore, challenges the valuation as being inadequate."

In September 2012, Mr. Greer issued a report that, in effect, valued plaintiff's fifty shares at just under $190,000. In a November 2013 letter, plaintiff challenged Mr. Greer's valuation as "inadequate" for several specified reasons, none of which referred to Mr. Greer's qualifications or the fact that he was not a "certified" business valuator.

In March 2014, Ms. McDonnell provided a report for plaintiff that calculated the value of Mr. Greer's shares at over $600,000. In the report, Ms. McDonnell states that although Mr. Greer is an "Accredited Rural Appraiser" an "ARA accreditation does not necessarily lend itself to business valuation" and "does not necessarily qualify him as a business valuation expert."

Ms. McConnell listed what she described as the four major professional business valuation organizations. Mr. Greer's credentials did not include certification by any of these organizations.

In November 2014, plaintiff filed a complaint in the superior court alleging that he had been wrongfully discharged by FCI and that the company had violated the shareholder agreement by nominating an accountant who lacked the contractually agreed-upon credentials to value his shares.

Defendant moved for summary judgment on the breach-of-contract claim, arguing that: (1) Mr. Greer's appointment did not violate the agreement, as evidenced by the parties' conduct following plaintiff's termination, in agreeing to his appointment; and (2) to the extent that the parties acted inconsistently with the agreement, their acceptance of Mr. Greer effectively modified the agreement. Plaintiff responded that he was entitled to revaluation of his shares because of the parties' shared mistaken belief that Mr. Greer was qualified pursuant to their agreement to do the valuation.

The superior court granted defendants' summary judgment as to this claim, concluding that the parties' conduct unequivocally reflected their agreement to hire Mr. Greer, that any mistake was a unilateral mistake solely on the part of plaintiff, that defendants' conduct did not induce the alleged mistake, and that plaintiff assumed the risk of any such mistake on his part. The court entered final judgment after the parties settled the wrongful termination claim.

On appeal, plaintiff argues that: (1) the superior court should have denied defendants' motion for summary judgment because the record before it, viewed most favorably to him, showed that the alleged undervaluation of his stock was a product of the parties' joint mistake as to the valuator's eligibility under the contract to provide a valuation; and (2) alternatively, he may be entitled to relief for any unilateral mistake on his part if defendants knew that their chosen valuator was not properly certified and yet omitted informing him of that fact.

Plaintiff argues that inferences from his pleadings, deposition, and affidavits, viewed most favorably to him, demonstrate that he was obliged to sell his stock at far below its fair market value and that the cause of this "radical markdown" in value was Mr. Greer's failure to follow standards that a certified business valuator would have followed. The issue in this appeal is not whether plaintiff's shares were undervalued. Rather, the issue is whether the parties agreed to a valuation of plaintiff's shares by Mr. Greer under the mutual and material mistaken belief that Mr. Greer was a certified business valuator, as required by their shareholder agreement, or whether they parties modified the agreement by accepting Mr. Greer with his qualifications, which did not include any identified certification in business valuation.

This Court reviews motions for summary judgment de novo, applying the same standard as that applied by the superior court: summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); see Clayton v. Unsworth, 2010 VT 84, ¶ 15, 188 Vt. 432. While plaintiff, as the nonmoving party, "is entitled to all reasonable doubts and inferences," he "may not rest on allegations in pleadings to rebut credible documentary evidence or affidavits," but rather "must come forward with an opposing affidavit or other evidence that raises a dispute as to the fact or facts in issue." Clayton, 2010 VT 84, ¶ 16 (quotation omitted).

We conclude that the undisputed evidence reflects a mutual agreement to appoint Mr. Greer as the valuator, regardless of any contrary requirements in the shareholder agreement, that plaintiff has not provided any evidence of a mutual mistake on the part of both parties in entering

into that mutual agreement, and that the evidence would not support the relief he seeks—rescission of the agreement to rely on Mr. Greer's valuation—on the basis of his unilateral, subjective mistake.  We consider each of these conclusions in more detail.

First, assuming for the sake of argument that the parties had agreed that a jointly selected valuator must be certified by one of the four professional associations identified by Ms. McConnell, we conclude that the parties modified the shareholder agreement on that point by agreeing to hire Mr. Greer to conduct the valuation.

The law regarding the modification of contracts is well settled:

> The parties to a written contract not under seal, at any time before a breach of it, by a new contract not in writing, may waive, dissolve, or annul the former agreement, or in any manner add to, subtract from, or vary or qualify its terms, and thus make a new contract.  Either party may waive, either absolutely or conditionally, any stipulation in his [or her] favor, at any time before a breach.  It is not necessary that there be an express agreement of modification or substitution. A new agreement may be implied from the conduct of the parties.

Powers v. Rutland R.R. Co., 88 Vt. 376, 395 (1914) (quotation and citations omitted); see Foti Fuels, Inc. v. Kurrie Corp., 2013 VT 111, ¶ 29, 195 Vt. 524 ("Parties are generally free to alter or amend the terms of their contractual arrangements by mutual assent provided all requirements are met for a valid contract, including adequate consideration.").

In this case, the undisputed facts reflect that, irrespective of the shareholder agreement's requirement that they use "certified business valuator," the parties mutually agreed to work with Mr. Greer.  In his letter to plaintiff's attorney rejecting Ms. McDonnell and proposing Mr. Greer as the valuator of FCI's shares, FCI's attorney provided a detailed sheet on Mr. Greer's professional qualifications and experience, including that: (1) he is "qualified" in business valuation; (2) he is "accredited" by the American Society of Farm Managers and Rural Appraisers; (3) as chief operating officer of his current company, he heads the appraisal risk management and business valuation services in six states; (4) his responsibilities include "appraising, supervising, and reviewing appraisals on real estate, businesses and personal property on a national basis"; and (5) his business valuation experience has included "the valuation of entire companies, minority stock and partnership interests."  The letter also provided Mr. Greer's website and invited plaintiff's counsel to review Mr. Greer's background there.  Nowhere did the letter represent that Mr. Greer had additional certifications not specifically referenced in the letter, including certification by one of the professional associations identified by Ms. McDonnell.

Nearly seven weeks later, plaintiff's attorney informed FCI's attorney in writing that plaintiff agreed to the appointment of Mr. Greer as the "business valuator pursuant to Section 7.1(c)(ii) of the Shareholder Agreement."  The letter refers to 7.1(c)(i), agreeing that Mr. Greer should provide an "opinion of value," but says nothing about the "certified business valuator" requirement contained in that subsection.  Moreover, in his deposition, plaintiff stated that he agreed to Mr. Greer being the valuator after doing an independent review of his qualifications.  Plaintiff's agreement to appointing Mr. Greer as a joint valuator was unconditional.

4

These undisputed facts reflect an exchange that bears all the hallmarks of an enforceable agreement to appoint Mr. Greer. To the extent Mr. Greer's hiring violated the provision in the initial agreement requiring the valuator to be a "certified business valuator," the parties effectively modified that aspect of their agreement by entering into a subsequent agreement to work with Mr. Greer.

Second, we reject plaintiff's argument that this agreement to appoint Mr. Greer is unenforceable because it was the product of a mutual mistake. Plaintiff argues that, perhaps for different reasons, both parties mistakenly believed that Mr. Greer was eligible to serve as their joint business valuator pursuant to the shareholder agreement.

Generally, voiding contracts based on mistake is done only in "exceptional situations" because "[t]he law of contracts supports the finality of transactions lest justifiable expectations be disappointed." Restatement (Second) of Contracts, ch. 6, intro. note (1981). "[S]ince mistakes are the exception rather than the rule, the trier of the facts should examine the evidence with particular care when a party attempts to avoid liability by proving mistake." Id. § 152, cmt. a. "Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he [or she] bears the risk of the mistake under the rule stated in § 154." Id. § 152(1); see also Rancourt v. Verba, 165 Vt. 225, 228 (1996) ("Where a contract has been entered into under a mutual mistake of the parties regarding a material fact affecting the subject matter thereof, it may be avoided . . . at the instance of the injured party." (quotation omitted)). Thus, three conditions must be met for a contract to be voidable: (1) the mistake must relate to a basic assumption upon which the contract was made; (2) the mistake must have a material effect on the agreed exchange of performances; and (3) the party seeking relief must not bear the risk of the mistake. Restatement (Second) of Contracts § 152 cmt. a. "Relief is only appropriate in situations where a mistake of both parties has such a material effect on the agreed exchange of performances as to upset the very basis of the contract." Id. The party alleging mistake has the burden of proving it beyond a reasonable doubt. Sparrow v. Cimonetti, 115 Vt. 292, 300 (1948). That party cannot prevail merely by showing that he or she would not have made the contract absent the mistake; rather, the party "must show that the resulting imbalance in the agreed exchange is so severe that [the party] cannot fairly be required to carry it out." Restatement (Second) of Contracts § 152 cmt. c.

Moreover, a party bears the risk of a mistake when: (1) the parties agree to allocate the risk to that party; (2) the party is aware at the time the contract is made that he or she "has only limited knowledge with respect to the facts to which the mistake relates but treats his [or her] limited knowledge as sufficient"; or (3) the court allocates the risk based on its conclusion that it is reasonable to do so under the circumstances. Id. § 154. A party claiming a mistake on the part of only one of the parties to a contract must meet the same three conditions as with an alleged shared mistake but must also show either that the effect of the mistake is such that enforcement of the contract would be unconscionable or that the other party caused the mistake or had reason to know of the mistake. Id. § 153.

We conclude that the plaintiff's pleadings, depositions, and affidavits failed to demonstrate that plaintiff would be able to meet his significant burden under the above standards. Although plaintiff has presented affidavit testimony that he mistakenly believed that Mr. Greer was a certified valuator, he has not presented any evidence that defendants likewise labored under any misimpressions in entering into an agreement to work with Mr. Greer. Plaintiff cannot rely on the absence of specific evidence that defendants knew that Mr. Greer was

5

not certified by one of the specific professional associations cited by Ms. McDonnell, because plaintiff bears the burden of establishing the mutual mistake. He needs some affirmative evidence that defendants were mistaken on this point, and offers none.

Nor does the record support plaintiff's claim that, even if they were not mistaken as to whether Mr. Greer had the necessary credentials, defendants were mistaken as to whether Mr. Greer was eligible under the contract to perform the valuation. The only evidence on point is testimony from one of defendants' principals that he had confidence in the valuator, and did not give consideration either way to whether he had the specific credential at issue. This evidence does not support the claim that defendants operated under a mistaken belief in choosing the valuator. At most it shows that whether the valuator had one of the identified credentials was immaterial to defendants' agreement to rely on Mr. Greer.

Finally, plaintiff has not proffered sufficient evidence to suggest a unilateral mistake that would relieve him from the terms of the contract. Nothing in defendants' communications to plaintiff indicated that Mr. Greer had one of the specific credentials that plaintiff argues was essential. Defendants provided information about Mr. Greer's background, as well as a link to his company's web site. Neither of these sources of information suggested that Mr. Greer was a certified business valuator. Plaintiff had every opportunity to inquire further about Mr. Greer's qualifications and credentials, and did not do so. Plaintiff's stated assumptions that defendants would not nominate someone who lacked the necessary credential and that the valuator himself would not serve upon the requirements of the shareholder agreement, were not reasonable under the circumstances. To the extent that plaintiff was mistaken about Mr. Greer's credentials, plaintiff assumed the risk by accepting Mr. Greer's appointment based on the information provided by FCI and his own independent research without specifically inquiring about the certification. See id. § 154 cmt. a.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice